584 F.2d 841
 NILO BARGE LINE, INC. and United States of America, et al.
v.
The M/V BAYOU DuLARGE, her engines, boilers, tackle, apparel
and furniture, in rem, and the Bayou DuLarge
Corp., a corporation, and Big B. Towboat
Service, Inc., a corporation,
in personam,
Marine Credit Corporation, Intervening Claimant-Appellant,
The Hospital Trust Leasing Corporation, Appellee.
 No. 77-1911.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1978.
Decided Aug. 25, 1978.
 
 1
 Frank J. Dantone, of Lane & Henderson, Greenville, Miss., argued; Joel J. Henderson, Greenville, Miss., on brief, for appellants.
 
 
 2
 William G. Cole (on brief), of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., argued; Craig A. Newman, St. Louis, Mo., on brief, for appellee.
 
 
 3
 Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and SCHATZ, District Judge.*
 
 
 4
 SCHATZ, District Judge.
 
 
 5
 This appeal is from a decision of the trial court which denied certain claims of the appellant, Marine Credit Corporation, pursuant to a complaint In rem against the vessel M/V Bayou DuLarge. We affirm.
 
 
 6
 The M/V Bayou DuLarge was constructed between June, 1973, and November, 1973, in Louisiana. The Bayou DuLarge Corporation constructed the vessel and sold it to the Hospital Trust Leasing Corporation on November 2, 1973. The Hospital Trust then executed a demise charter for the vessel to the Bayou DuLarge Corporation. On November 8, 1973, the Bayou DuLarge Corporation signed a lease with Specialized Electronics Division of Oakmont Marine Corporation for electronic navigational equipment. The equipment had been installed on the vessel during its construction prior to November 2, 1973. The Bayou DuLarge Corporation made payments on the lease from November 8, 1973, until February 1, 1976, when it defaulted. On November 19, 1975, Specialized Electronics assigned its lease to the appellant, Marine Credit Corporation.
 
 
 7
 The owner, Hospital Trust, seized the M/V Bayou DuLarge in a possessory action (which was subsequently dismissed) on December 10, 1976. On March 16, 1977, while the vessel was in the custody of the United States Marshal, Nilo Barge Line filed a complaint In rem against the M/V Bayou DuLarge to recover damages resulting from a collision. On May 16, 1977, Marine Credit, among others, intervened. The district court, on July 25, 1977, denied Marine Credit's motion to reclaim its leased equipment from the vessel and again, on August 9, 1977, the court denied Marine Credit's motion to alter or amend that denial of a right to reclaim. The M/V Bayou DuLarge was subsequently sold at a Marshal's sale and that sale was confirmed by the district court. The court's order of October 21, 1977, after hearings concerning the issues, distributed the proceeds from the sale but did not allow Marine Credit to share in the distribution. Marine Credit appealed both the district court's order denying Marine Credit the right to share in the distribution of the proceeds and also the order denying Marine Credit an opportunity to reclaim its equipment.
 
 DISTRIBUTION OF PROCEEDS
 
 8
 Marine Credit cannot participate in the distribution of proceeds from the Marshal's sale of the M/V Bayou DuLarge unless Marine Credit establishes that a maritime lien attached to its leased equipment. It is well settled that a contract for building or supplying materials for the original construction and outfitting of a ship is not a maritime contract. Roach, et al. v. Chapman, et al., (The Capitol), 22 Howe 129, 63 U.S. 129, 16 L.Ed. 291 (1859). In Thames Towboat Co. v. The Schooner Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920), the court discussed the original construction doctrine and defined what labor and supplies could be considered within the purview of that doctrine:
 
 
 9
 (T)he doctrine is now firmly established that contracts to construct entirely new ships are nonmaritime because not nearly enough related to any rights and duties pertaining to commerce and navigation. It is said that in no proper sense can they be regarded as directly and immediately connected with navigation or commerce by water. (Citations omitted.) And we think the same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended.
 
 
 10
 This matter has been more recently addressed in two cases, Boat La Sambra v. Lewis, 321 F.2d 29 (9th Cir. 1963), and Dubuque Boat & Boiler Co. v. Oil Screw Commander, 251 F.Supp. 923 (W.D.Mo.1966). Boat La Sambra concerned contracts for the installation of ship-to-shore radio and automatic pilot equipment in vessels prior to the launching of those vessels. The court stated:
 
 
 11
 "The supplying of the original equipment of the vessel as well as the building of the hull is held to be outside of the admiralty jurisdiction. Even after the vessel is launched, while she is not yet sufficiently advanced to discharge the functions for which she is designed, the materials, work and labor for her completion are not the subject-matter of admiralty jurisdiction. The contract is treated as one merely preliminary to the use of the ship as an instrumentality of commerce and navigation." One Benedict, Admiralty, Section 69, at 143-45 (6th ed. 1940).
 
 
 12
 321 F.2d at 31.
 
 
 13
 In Dubuque Boat & Boiler, equipment was ordered before delivery of a completed vessel but was not installed until after delivery. The court refused to apply a mechanical test for determining whether the vessel was complete under the original construction doctrine, but rather considered the scope of the contract under which the items were supplied to determine whether the vessel was "complete."
 
 
 14
 The facts of this case fit squarely within this doctrine. Even though the lease for the equipment was executed on November 8, 1973, shortly after the boat's completion, it is clear from the evidence presented to the district court that the equipment had been installed prior to that time while the boat was under construction and, therefore, is unquestionably within the purview of the doctrine. This court affirms the district court's finding that no maritime lien existed, and accordingly, Marine Credit had no right to share in the proceeds from the sale of the M/V Bayou DuLarge.
 
 RECLAMATION OF EQUIPMENT
 
 15
 Marine Credit has argued that even if it cannot participate in the distribution of proceeds, it should be able to reclaim its property from the vessel.
 
 
 16
 The value of the equipment installed on the vessel was $13,510.85. Under the lease agreement, Bayou DuLarge was to pay thirty-three monthly payments of $499.90 with a purchase option for the payment of an additional $4,500. Bayou DuLarge has paid approximately $15,000 under this lease agreement.
 
 
 17
 On July 14, 1977, Marine Credit filed a motion in the district court to reclaim its equipment. This motion was made before the sale of the vessel when several matters were still undetermined:
 
 
 18
 1) Whether Marine Credit had a maritime lien on its equipment;
 
 
 19
 2) What the total amount of maritime lien claims would be; and
 
 
 20
 3) Whether those claims would be satisfied by the proceeds from the sale of the vessel.
 
 
 21
 The district court denied the motion on July 25, 1977, and also denied a subsequent motion to amend that denial. Marine Credit did not choose to take an interlocutory appeal from those denials, nor did Marine Credit renew its motion for reclamation after the interlocutory sale or after the district court's deadline for intervention in the action.
 
 
 22
 Marine Credit appeals to this court from the denial of its motion to reclaim. Hospital Trust argues that Marine Credit failed to properly raise the reclamation issue in the trial court or to properly preserve the issue for appeal. It is noted that Marine Credit did not move the court for reservation of its title at the time of sale, nor did it oppose the order of sale or the confirmation of the sale. Payne v. S. S. Tropic Breeze, 274 F.Supp. 324 (D.Puerto Rico, 1967); United States v. F/V Sylvester F. Whalen, 217 F.Supp. 916 (D.Me.1963). Marine Credit made no request that the property in question be sold separately. First National Bank and Trust Co. of Escabana v. O/S Olive L. Moore, 379 F.Supp. 1382 (W.D.Mich.1973). Marine Credit did not even raise the reclamation issue at the hearing of October 21, 1977, Supra, page 3, when both Marine Credit and Hospital Trust were before the court for a determination of their respective interests in the property.
 
 
 23
 In light of the plaintiff's failure to properly preserve the motion for reclamation, this court is limited in its review to consideration of the reclamation issue in the context in which it was asserted. Under the state of the record, at the time the motion was presented, the district court's denial of that motion was entirely appropriate. The plaintiff's failure to properly reassert the issue at any later point in the proceedings precludes any further consideration.
 
 
 24
 The order of the district court is correct and is affirmed in all respects.
 
 
 
 *
 The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation