## The Manhattan.

### Lake *v.* The Manhattan, etc.

*(District Court, D. Washington, N. D.  June 22, 1891.)*

1. **Maritime Contracts.**
   Contracts for work to be performed and materials to be furnished in completing and equipping a new vessel, left uncompleted by her builders, where such contracts are entered into and have their inception after the vessel has been launched and named, and become capable of being identified as a vessel, are maritime contracts.

2. **Same—Lien—Admiralty Jurisdiction.**
   Where, by a local statute, a lien is given for work done and materials furnished in the construction of vessels, a suit *in rem* against the vessel upon such a contract, as above described, and to enforce such a lien, can be maintained, and is within the admiralty jurisdiction of the United States courts.

*(Syllabus by the Court.)*

In Admiralty.
*F. H. Peterson,* for libelant.
*Carr & Preston, Weistling & Weistling, W. A. Peters,* and *C. D. Emery,* for intervening libelants.
*J. B. Metcalfe,* for claimant.

HANFORD, J.  The Manhattan is an uncompleted vessel. The libelant built her in this state, and launched her upon Lake Washington, for persons who intended to own and run her upon said lake, but failed to pay the libelant for her construction according to their contract. For this failure to pay him, the libelant sold the vessel to other parties in the condition in which she then was; that is to say, a mere hull, without masts, sails, machinery, or other propelling power. The purchasers caused her to be floated or towed upon the waters of Lake Washington, Black river, and Duwamish river to the harbor of the city of Seattle, and thence to a ship-yard owned and managed by the libelant; and afterwards, under a new contract with them, the libelant performed work and furnished materials towards completing and changing the vessel from a side-wheel steamer into a propeller, and there is now due to him the sum of $1,367.96 for said work and materials, and he has a statutory lien therefor by virtue of the laws of this state in force during the time of the performance of the contract. To enforce said lien this suit *in rem*

against said vessel was brought. Her machinery has not been placed in said vessel, and she has not been surveyed, enrolled, or documented at the custom-house, and she has never been used. Several intervening libels have been filed by parties claiming to have statutory liens for materials furnished and labor performed, and one wherein the intervening libelant claims to have a maritime lien for towing the vessel from the libelant's yard to the place at which she was to have received her machinery. The claimant alleges that he has purchased the vessel from the parties who purchased her from the libelant and contracted the debts in suit. The evidence has been taken by a commissioner, who has certified the same to the court with his findings, which findings the court adopts as the facts in the case.

The ground upon which the claimant defends is that the contracts sued on are not maritime, and not cognizable in admiralty, and that therefore the case is not one of which this court can have jurisdiction. The question here presented is not new. The right to sue in the court of admiralty upon contracts of this class is a subject of discussion which our ancestors brought with them from England before the first courts were established in the American colonies, and the debate upon it has continued through all the changes which have transpired in the judiciary of the country. The lawyers and litigants continue to contend for the right in the face of decisions of the courts, and they seem to be determined to not accept the decisions, or regard them as being decisive, and the decisions have not been uniform nor harmonious. According to the earliest reported cases, all contracts for building, repairing, and equipping vessels were held to be maritime contracts, and cognizable in the admiralty courts. In the case of *Cunningham* v. *Hall*, 1 Cliff. 43, decided by Mr. Justice CLIFFORD very soon after the decision of the supreme court in the case of *Ferry Co.* v. *Beers*, 20 How. 393, that learned justice, in his opinion, reported in 1 Cliff. 53, cites the earlier decisions, and in the same connection makes this clear statement:

"Contracts for the building of ships, where a lien is given under the local law, have heretofore been regarded as maritime, and in repeated instances the lien so created has been enforced by a proceeding *in rem,* and the practice appears to be fully sanctioned by the twelfth admiralty rule."

The twelfth admiralty rule, adopted by the supreme court in 1844, which was thus referred to by the justice, reads as follows:

"In all suits by material-men for supplies, repairs, or other necessaries for a foreign ship, or for a ship in a foreign port, the libelant may proceed against the ship and freight *in rem,* or against the master or owner alone *in personam,* and the like proceeding *in rem* shall apply to cases of domestic ships, where by the local law a lien is given to material-men for supplies, repairs, and other necessaries."

This rule was amended by the court in 1859, and again in 1872. The decision of the supreme court of the United States in the case of *The General Smith*, 4 Wheat. 438, (in 1819,) was the beginning of a departure; and from that time until the *Lottawanna Case*, 21 Wall. 558, was decided, in 1874, the tendency of the decisions was very strongly against

maintaining admiralty jurisdiction in cases founded upon contracts of the class under consideration; and for upwards of 30 years past the courts have uniformly held that contracts for the building of ships, and for furnishing materials to be used in the original construction thereof, are not maritime, and that suits founded upon such contracts are not within the admiralty jurisdiction of the courts of the United States. *Ferry Co.* v. *Beers*, 20 How. 393; *Roach* v. *Chapman*, 22 How. 129; *Edwards* v. *Elliott*, 21 Wall. 532; *The Orpheus*, 2 Cliff. 29. The courts, however, still maintain that contracts for repairing and rebuilding vessels are maritime, and cognizable in admiralty. *Peyroux* v. *Howard*, 7 Pet. 324; *The Grapeshot*, 9 Wall. 129; *The Lulu*, 10 Wall. 192; *The Kalorama*, Id. 204; *The Lottawanna*, 21 Wall. 558, Hen. Adm. 44.

I consider that this court is bound to hold, in deference to the decisions of the supreme court, that contracts for the building of vessels, and for furnishing materials to be used in the original construction thereof, are not subjects of admiralty jurisdiction. Such is the doctrine to which that court seems to be fully committed. The opinion in the case of *Edwards* v. *Elliott*, above cited, was written by Mr. Justice CLIFFORD, who concurred in the decisions of the court in *Ferry Co.* v. *Beers*, and *Roach* v. *Chapman*, and who wrote a dissenting opinion in the case of *The Lottawanna*, and it contains the fullest discussion of the subject, and statement of the reasons for its decision, which that court has given. I have looked for the reasons in order to learn, if possible, how to reconcile the decisions holding contracts for the building of ships to be not maritime with those holding contracts for the repair and rebuilding of vessels to be maritime, and where to draw the line dividing contracts for doing mechanical work, and for furnishing building materials and machinery, which are classed as non-maritime, from those contracts for doing precisely the same kind of mechanical work, and furnishing the same kind of materials and machinery, which are maritime. And my conclusion is that, if there is any reason for the distinction other than the mere fact that it exists because the courts have created it by their arbitrary decisions, it is to be found in this: that a maritime contract is defined to be one having reference to commerce or navigation. The particular element essential to give it a maritime character is direct connection with commercial transactions or navigation; and such connection is lacking in a contract to create a new ship, or, if not lacking entirely, it is remote and contingent, so that it is not perceptible at the time the contract goes into effect as a binding obligation. But whatever is done to or about an existing ship has direct reference to commerce and navigation. A ship *in esse* as a maritime subject gives a maritime character to all transactions directly connected with it. The cases are distinguishable thus: One class, founded upon contracts for the repairing and rebuilding of vessels, holds such contracts to be maritime, because they affect vessels *in esse;* and the other class, founded upon contracts for the building of proposed vessels, holds such contracts to be non-maritime, because they touch maritime subjects only by relation to proposed vessels, the future exist-

ence of which is contingent upon performance of the terms of the contract in each case.

The condition of the vessel, whether new or old, whether complete in all respects, and equipped for service, or only a mere hulk, without sails, rigging, or masts, or means of propulsion, is not determinative of the question; and in case of a vessel in the latter condition it makes no difference in principle whether she may have been once complete, and have been disabled and stripped, or whether the things necessary to render her complete and sea-worthy are lacking simply because they have never been supplied. After a new ship has been launched, and embraced by the element upon which she is intended to float, and been christened, and become an entity fully capable of being identified, she is as much a subject of admiralty and maritime jurisdiction as she can be at any later period of her history; and contracts then entered into relating to her completion, equipment, or employment are maritime, and cognizable in admiralty. *The Eliza Ladd,* 3 Sawy. 519; *Revenue Cutter No. 2,* 4 Sawy. 143. In harmony with these views, the contracts under consideration, having originated after the vessel had been launched, are to be regarded as maritime, and the case is within the jurisdiction of this court. It is my opinion, therefore, that the libelant, and each of the intervening libelants except Charles H. Allmond, are entitled to recover the sum due them as per the commissioner's report. As to Mr. Allmond, I hold that he is precluded by the terms of his contract from recovering any sum at the present time, for the reason that he has not completed his contract, which is in writing, and which contains an express provision to the effect that no money in addition to what has already been paid to him is to be due or payable until the contract shall be fully completed. A decree will be entered in accordance with this opinion.