**DUBUQUE BOAT & BOILER COMPANY,**
Libelant,

v.

The **OIL SCREW COMMANDER,** her tackle, apparel, furniture, etc., and Stanleigh R. Palmer, Jr., Respondents.

No. 936.

United States District Court
W. D. Missouri,
Central Division.

March 18, 1966.

Lucas & Murphy, St. Louis, Mo., Spencer, Hines & Petri, Columbia, Mo., for plaintiff.

Hendren & Andrae, Charles Howard, Jefferson City, Mo., for respondents.

JOHN W. OLIVER, District Judge.

Libelant filed this action attempting to invoke the original admiralty jurisdiction

of this Court upon an alleged cause of contract, civil and maritime, against the M/V COMMANDER, in rem, and against Stanleigh R. Palmer, Jr., her owner, in personam. There is no possible federal jurisdictional base except admiralty.

Libelant alleged that certain materials, supplies and equipment were furnished and certain work done by it on the vessel during the months of May to October, 1961, for which libelant was not paid. Motions to dismiss and for summary judgment questioning the jurisdiction of this Court could not be ruled because libelant insisted throughout the pretrial proceedings that certain facts relating to our jurisdiction were in dispute. This case was accordingly set for hearing and evidence on both the jurisdictional question and on the merits was received. We need discuss only the jurisdictional question because we have concluded that we do not have jurisdiction of this case.

The only real factual dispute is whether all of the items involved in this action were actually on the M/V COMMANDER at the time of the trial runs on June 23, 1961, or whether some of those items were placed on the vessel after respondent Palmer accepted delivery from the libelant who built her under contract.

We are not convinced that this case turns on so fine a point of fact as to whether the items were on board before or after June 23, 1961, the day of the trial runs and acceptance of the vessel, but, if important, we are convinced that the preponderance of the evidence requires a finding that they were on board before that day.[1]

We therefore find, in accordance with respondent's suggested finding of fact No. 4, that the Zinc Bars, ordered May 5, 1961, were on the vessel prior to June 23, 1961; that the Transducer Opening, ordered May 8, 1961, was on the vessel prior to June 23, 1961; that the Cradles, ordered June 19, 1961, (for use in overland transportation) were fabricated prior to June 23, 1961; were lying on the dock that day, and were physically placed on board the M/V COMMANDER prior to its leaving libelant's harbor on June 24, 1961; that the Chairs, ordered June 15, 1961, were on the vessel prior to June 23, 1961; that the Bar, ordered June 21, 1961, was on the vessel June 23, 1961; that the Life Preservers, ordered June 21, 1961, were on the vessel prior to June 23, 1961; that the Grating, ordered June 22, 1961, was on the vessel prior to June 23, 1961; that the Rope and the Light Bulbs and Fixtures, all ordered June 23, 1961 were on the vessel on that day; and that all items found to be on board were on board at the time of the river trials and before respondent accepted delivery of the vessel.

We also find and determine that respondent's suggested finding No. 5 is supported by the preponderance of the evidence. We therefore make that finding in the language suggested by respondent:

Libelant contracted with Palmer to construct a new vessel, with a base contract price of $45,250.00; COMMANDER was designed for and was intended to be put at the Lake of the Ozarks as an excursion vessel to haul passengers for hire; that all of the above items, though extra to the original contract price of the vessel, were intended for and became a part of the original equipment, and served the purpose of making the vessel safer and more useful for its intended purpose; and all of the items mentioned in paragraph 4 were installed and put in place when the vessel was still undelivered and at the Libelant's premises.

---

[1]. Libelant agrees that "whether or not the items were installed before or after river trials should not affect the maritime nature of a suit on a contract for necessaries and supplies furnished to a new vessel under the terms of 46 U.S.C.A. 971." (Page 1 Libelant's reply brief). Consistent with that thought, and except for the Cradles involved, libelant did not request any specific finding of fact that the items involved were not on the vessel before June 23, 1961, although libelant did offer some evidence to that effect in regard to some of the items.

The language of that finding, of course, includes a construction of the contractual relationship that we have found to exist between the parties. We believe that it over-simplifies this case to say, as libelant does say, that "nowhere does respondent contend that the items covered in this suit were a part of the original construction contract" (page 9 of libelant's reply brief).

It is true that the respondent did not make that contention; but it is equally true that our admiralty jurisdiction over this case does not turn on respondent's ability to sustain a contention not made, nor required to be sustained by him.

The original proposal of the libelant, dated January 25, 1961, accepted contemporaneously by the respondent, provided for a base contract price of $45,-250.00 to construct the vessel 'n accordance with the specifications attached and made a part of that base contract. The evidence in this case, however, revealed the usual situation under which the parties thereafter agreed to changes and alterations, commonly called 'extras', all of which anticipated a later adjustment in the base contract price to be paid for the construction of the vessel.

The affidavit of R. J. Durbrow, filed July 27, 1964, in opposition to respondent's motion to dismiss for lack of jurisdiction, for example, concedes that the Zinc Bars and the Transducer (the installation of which required the making of an opening in the bottom of the hull to accommodate the depth finder) were in fact considered and described as extra items not included in the specifications.

The correspondence between the parties, after they got into somewhat violent disagreement about matters far more significant than the mere payment of the items involved in this action, described all of the items involved in this case as "extras" to the original contract. Libelant did not even bill respondent for those items until July 31, 1961.

In a letter dated May 22, 1962, written long before the filing of this action, Mr. Durbrow, vice president of libelant, wrote the respondent stating that "we certainly would like to get our accounts in order * * * and I think that you agree the matter has dragged on much too long for either your good or ours" (Exh. 8). He also stated in that letter that "when the boat left here, everything was apparently satisfactory to everybody concerned, and the contractual price paid in full which certainly indicates approval of the vessel on your part" (Exh. 8).

He added, significantly, so far as this case is concerned, that "the balance remaining [referring to the unpaid bill for the items involved in this case] is for 'extras' and, quite frankly, should be paid in full" (Exh. 8).

In similar fashion, Mr. Durbrow later wrote respondent on October 11, 1962 (Exh. 9). In that letter he stated the reason why the items involved in this case were not paid for at the same time the base contract price was paid. Mr. Durbrow stated:

When this vessel was completed, you accepted it, paid the full contractual price, plus the extra for the second deck, which was also a predetermined figure, *leaving only the other extras unpaid and these only because we had not at that time determined the cost involved* (Exh. 9, emphasis ours).

With equal significance, Mr. Durbrow stated that "since none of the so-called 'complaints' involved the extras, they should accordingly be paid" (Exh. 9).

Another portion of libelant's letter of October 11, 1962 establishes that the contract for the execution of this new vessel was executed in a manner typical of the execution of construction contracts generally. In explanation of libelant's failure to comply with the delivery date of May 15, 1961, Mr. Durbrow emphasized that the contract setting that date called for delivery "of a vessel constructed in accordance with the specifications." He then adds that "a total of over $4200 * * * was added * * * to the boat which you ordered * * * in 'extras', and I am sure you understand that these extra items can not be fabricated without the expenditure of time" (Exh. 9).

■ The evidence is undisputed that the parties agreed to a redesign of the entire superstructure of the vessel, a radical departure from the original specifications, in order to accommodate a second deck capable of carrying passengers. Such an extra, like the other extras involved in this case, obviously was not within the terms and conditions of respondent's original proposal made January 25, 1961. It is equally obvious that the vessel was constructed in compliance both with the specifications which were a part of the original proposal and the changes and additions made to and agreed upon by the parties from time to time as construction progressed. The agreements on the changes and additions are not severable from but constitute an integral part of the entire contract of the parties for the construction of a new vessel. We so find and determine.

Libelant concedes that People's Ferry Co. of Boston v. Beers, 20 How. 393, 15 L.Ed. 961 (1857), states the applicable rule of decision. That case held:

> The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services, purely maritime, and touching rights and duties appertaining to commerce and navigation (20 How. 401).

The precise question determined by *People's Ferry Co.* was whether "the District Courts of the United States have jurisdiction to proceed in admiralty to enforce liens for labor and materials furnished in constructing vessels to be employed in the navigation of waters to which the admiralty jurisdiction extends" (20 How. 399–400). That case held a libel alleging such a claim should have been dismissed by the District Court for want of jurisdiction.

Although libelant indicates agreement with the familiar criticism of this landmark case,[2] it candidly conceded that "it is the law of the United States that a con-

tract to build a ship is not within admiralty jurisdiction" (page 9 of libelant's trial brief).

Criticism of the rule of *People's Ferry Co.* is not a new thing. The Supreme Court itself recognized in Thames Tugboat Co. v. The "Francis McDonald", 254 U.S. 242, at 244, 41 S.Ct. 65, at 66, 65 L.Ed. 245 (1920), that "[n]otwithstanding possible and once not inappropriate criticism, the doctrine is not firmly established that contracts to construct entirely new ships are nonmaritime." That case, of course, expressly reiterated that "the settled rule is that a contract for the complete construction of a ship or supplying material therefor is nonmaritime, and not within the admiralty jurisdiction."

The libelant in *The "Francis McDonald"*, like the libelant in this case, sought to recover for supplies furnished during the construction of an entirely new vessel. The Supreme Court held that admiralty jurisdiction should not be extended to contracts to construct new vessels because such contracts were "in no proper sense [to] be regarded as directly and immediately connected with navigation or commerce by water" and because "the same reasons which exclude such contracts from admiralty jurisdiction likewise [exclude] agreements made * * for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended" (254 U.S. at 244–245, 41 S.Ct. at 66).

New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482, did not in any way modify the rule of decision stated in *People's Ferry Co.* and in *The "Francis McDonald"*. Both *New Bedford Dry Dock Co.* and *The "Francis McDonald"* were written by Mr. Justice McReynolds. In *New Bedford Dry Dock Co.* it was again flatly held that "[a] contract for [repairs] is maritime; if [the contract is for original construction] it is not" (258 U.S. at 99, 42 S.Ct. at 244). *New Bedford Dry Dock Co.* is

---

2. Familiar passages criticising the rule of *People's Ferry Co.* are cited from Benedict on Admiralty, Sixth Edition, Vol. I, pages 146–147, and Gilmore and Black, The Law of Admiralty, pages 27–28.

of prime importance so far as this case is concerned because the maritime lien statute, which now appears as Section 971 of Title 46, United States Code, was directly involved.[3]

*New Bedford Dry Dock Co.* illustrates why libelant's arguments that "the terms of 46 U.S.C.A. 971 * * * creates a maritime lien on the vessel and is [therefore] within the admiralty jurisdiction" (page 9 of libelant's trial brief) and its argument that "the question here is whether this suit is based on a contract to construct a vessel or is brought under the terms of 46 U.S.C.A. 971" (page 10 of libelant's trial brief) are untenable.

*New Bedford Dry Dock Co.* teaches that if the action must necessarily be based on a contract to construct a new vessel, it is not within the original admiralty jurisdiction of the federal courts and that a federal court may not therefore entertain a libel to enforce a lien created by § 971.

*New Bedford Dry Dock Co.*, of course, was determined on its own particular facts. It did not announce any new rule of decision. That case recognized that "[i]t is not always easy to determine what constitutes repairs as opposed to original construction" (258 U.S. 99, 42 S.Ct.), but added that "[t]his court has not undertaken and will not now essay to announce rigid definitions of repairs and new construction" (258 U.S. 100, 42 S.Ct. 244).

On the facts there presented, *New Bedford Dry Dock Co.* merely held that the conversion of the Jack-O-Lantern from its original construction as a railroad car barge or float with neither motive power nor steering gear, into a steamer to be used for amusement purposes, equipped with steering apparatus and a steam plant of the propellor type, could not be held to be a contract for original construction.

The undisputed facts of the case at bar are readily to be distinguished from the factual situation presented in *New Bedford Dry Dock Co.* Every item furnished in this case was ordered during the execution of a contract for the construction of a new vessel and, to use the language of *The "Francis McDonald"*, was for "work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended."

It will not do to say, as libelant would have us say, that these items were simply "supplies and equipment furnished to a completed vessel" (page 4 of libelant's post-trial brief). The undisputed facts establish all items involved were ordered during the construction of the vessel and that they were installed as extras in obvious conformity with the intention of both parties to complete the vessel for its intended use as a passenger excursion vessel on the Lake of the Ozarks.

Until the full agreement of the parties as to what sort of a vessel was to be constructed had in fact been executed, and until all items ordered, including the extra items involved in this suit, were made a part of the vessel, it is impossible to hold that the vessel was a complete vessel. The extras, being but a part of the contract, may not be considered as "repairs" or as "supplies" or as "other necessaries" within the meaning of § 971 of Title 46, United States Code. Nor may they be considered to be outside the parties' contract for the construction of a new vessel and therefore within our admiralty jurisdiction, as conferred by §

---

3. Section 971, Title 46, United States Code, reads as follows: "Any person furnishing repairs, supplies, * * * or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Section 1333 of Title 28, United States Code, conferring general original admiralty jurisdiction on the district courts, in its pertinent part, provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. * * * *"

1333, Title 28, United States Code. We so hold.

Libelant's real argument to the contrary rests upon the unstated premise that extras to a base contract even though agreed upon by the parties and ordered long before delivery of the completed vessel, are nevertheless not to be considered a part of the contract for the construction of that new vessel simply because the owner accepted delivery of the vessel and made a partial payment on the final and not yet determined contract price. Such unstated premise is untenable and suggests the adoption of the same sort of mechanical test for drawing the line between what are, in fact, repairs and supplies and what are, in fact, but parts of an original construction contract for a new vessel. A not dissimilar sort of mechanical test was rejected by the Supreme Court in *New Bedford Dry Dock Co.* We reject libelant's suggested test in this case.

As we have noted, libelant is among the ranks of those who do not like the ancient rule of decision defining our original admiralty jurisdiction as announced over a century ago in *People's Ferry Co.* Quite recent recognition by the Supreme Court of *People's Ferry Co.* demonstrates that the rule of decision of that case has not been eroded by the passage of time. In Kossick v. United Fruit Co., 365 U.S. 731, at 735, 81 S.Ct. 886, at 890, 6 L.Ed.2d 56 (1961), the Supreme Court commented that "[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." But that Court, in reliance upon *People's Ferry Co.*, held that "[p]recedent and usage are helpful * * * as they exclude or include certain common types of contract; a contract to repair * * * is maritime, but a contract to build a ship is not."

Application of that rule requires that we find and determine that the items involved in this case were a part of a contract to construct a new vessel and that this action is not within the original admiralty jurisdiction of this Court.

Our application of the Supreme Court cases is consistent with the applications that have been made by other lower federal courts.

The Ninth Circuit found jurisdiction wanting in Boat La Sambra v. Lewis, 9th Cir. 1963, 321 F.2d 29. Libelant contends that case is in conflict with the earlier Ninth Circuit decision in The Mountaineer, 9th Cir. 1923, 286 F. 913. The former case, however, expressly distinguished the latter on the facts in 321 F.2d at 30. The Fifth Circuit, in American Shipbuilding and Dock Corp. v. John Rourke & Sons, 5th Cir. 1925, 4 F.2d 845, cert. denied 268 U.S. 702, 45 S.Ct. 638, 69 L.Ed. 1166, sustained jurisdiction because it found the facts there involved were more similar to *New Bedford Dry Dock Co.* than to *The "Francis McDonald"*.

The Third Circuit in The Pinthis, 3rd Cir. 1923, 286 F. 122, sustained jurisdiction on a rationale different from any of the other decided cases. Libelant places great reliance on *The Pinthis*. We refuse to follow the rationale of that case.

The suggestion of the Third Circuit in *The Pinthis* that the applicable rule of decision was established by the Supreme Court in Tucker v. Alexandroff, 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed. 264 (1902), and the suggestion in that case that the principle allegedly established by the *Alexandroff* case was "later modified" by *The "Francis McDonald"* and *New Bedford Dry Dock Co.* are expressions of judicial ideas that did not occur to the Supreme Court. Indeed, such suggestions have been expressly rejected by that court.

Tucker v. Alexandroff was cited to the Supreme Court during argument in *The "Francis McDonald"*, apparently in an effort to have that court sustain the proposition later accepted by the Third Circuit in *The Pinthis*.

Mr. Justice McReynolds expressly dealt with that argument in *The "Francis McDonald"* and held that "Tucker v. Alexandroff must be read in the light of the

particular matter under consideration—detention of a foreign seaman—and the conclusion announced * * * had no immediate concern with contracts for ship construction, and there was no purpose to lay down any definite rule applicable to them." It is obvious why we must refuse to follow a case that bases its rationale upon a decision that the Supreme Court has held to be inapposite.

It is not necessary that we examine in detail the specific factual situations involved in the cases just cited. It is sufficient to say that they involve applications of the rule that the jurisdictional question involved must be determined on a case by case basis, each case turning on the facts peculiar to it. The case of General Engine & Machine Works v. Slay, S.D.Ala.1963, 222 F.Supp. 745, not cited by either party, has a factual background not dissimilar with respect to the contractual arrangements and agreements that we have found to have existed in this case. We believe that a brief analysis of that case would be helpful.

In *General Engine* the parties agreed upon a "rough price" in a manner more informal than, but factually equivalent in substance, to the parties' agreement, by written quotation and acceptance, of the base contract price of $45,250.00 involved in this case. That agreed "rough" price, in *General Engine*, as was true of the agreed base contract price here involved, was subject to change.

In *General Engine* libelant commenced work while the hull of the Danlyn was still on the ways, continued its work after she was launched and even after she had been towed to another mooring.

The jurisdictional theories of the libelants in *General Engine* and this case were a bit different in that the libelant contended in *General Engine* that admiralty jurisdiction vested when a hull is launched whereas libelant in this case contends that admiralty jurisdiction vested the moment the vessel passed the trial runs and was accepted by the owner. In its application of the principles of the same Supreme Court cases we have cited, however, *General Engine*, we believe correctly noted that it was quite immaterial as to whether the work and material was supplied before or after the launching of the vessel because it was clear under the facts that the agreement for that work was made prior to the launching and therefore must be considered as a part of a contract for the construction of a new vessel.

Specifically, *General Engine* held that "[t]he contract * * * was entered into prior to the launching * * and work performed thereunder by the libelant was in the nature of original construction, irrespective of the fact that some of the work involved necessarily took place after the launching." That case, of course, concluded that "the rule as set out by the Supreme Court in the *'Francis McDonald'* * * * [therefore] applies here" and dismissed the libel for want of jurisdiction.

Under all the facts and circumstances as we have found them, the items here involved must be considered a part of the parties' contract for the construction of a new vessel; that from a legal viewpoint, whether the items were or were not on board the M/V COMMANDER before June 23, 1961 is not of controlling significance for the reason that the question of whether this Court may exercise original admiralty jurisdiction does not really turn on that narrow point but is dependent upon the scope of the contract under which the items were furnished. In short, we hold, as did *General Engine*, that the rule of The *"Francis McDonald"* is applicable to the facts as we have found them and that the libel must be dismissed for want of jurisdiction.

For purposes of possible appeal, and pursuant to Rule 52(a) of the Rules of Civil Procedure, we believe that it is not necessary to make any additional findings of fact or to state any additional conclusions of law, but in order that our full view be reflected of record, we adopt all of respondent's suggested findings of fact and suggested conclusions of law together with the first two findings of fact suggested by libelant. We reject

the remaining findings of fact and conclusions of law suggested by the libelant.

For the reasons stated, this libel should be and is hereby dismissed, without prejudice, for want of jurisdiction.

It is so ordered.