HATTERAS OF LAUDERDALE, INC.,
Plaintiff–Appellant,

v.

GEMINI LADY (A Vessel),
Defendant–Appellee.

No. 87–5928.

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1988.

Michael H. Davidson, Ft. Lauderdale, Fla., for plaintiff-appellant.

Marc David Sarnoff, Miami, Fla., for defendant-appellee.

Before FAY and VANCE, Circuit Judges, and HOFFMAN *, Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

On January 1, 1985, American Technical Enterprises, Inc. (American), entered in a contract for the purchase of a Hatteras Motor Yacht, the "Gemini Lady," from Hatteras of Lauderdale, Inc. (Hatteras), a

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

yacht retailer. As a part of this sales contract a substantial amount of customization was to be made to the Gemini Lady prior to delivery. This customization went from refinishing and remounting the port and starboard running lights to fabricating and installing "custom Glass Enclosure for aft salon center to cockpit w/sliding P & S aft windows." Yacht Purchase Order, Exhibit A (Invoice # 0195) at 2. In order to cover the cost of this customization, an allowance of $70,000.00 was included in the purchase price of approximately $1.2 million.

In the latter part of June of 1985 the Gemini Lady was delivered to American along with a bill for $63,279.00 due on closing. The bill indicates that additional customization resulted in this amount being due over and above the original $70,000.00 allocated. Hatteras contends that the additional customizing was agreed to orally by Gunther Bruss, President of American, and Howard Dillion, Esquire, a duly authorized agent of American. Bruss disputed the existence of the alleged oral contract and refused to pay the bill.

On April 21, 1986, the appellant filed a Complaint in Admiralty alleging "certain repairs to the machinery of said vessel of the reasonable value of $86,547.84." Also, maritime jurisdiction was specifically alleged in the first numbered paragraph. This complaint was signed by counsel and was accompanied by a verification of Stuart Zarchen, Hatteras's office manager. A warrant for arrest of the Gemini Lady was issued on April 24, 1986 resulting in the attachment of the vessel on April 30, 1986 by the United States Marshal. A "Claim to Vessel" was made by Robert W. Turken on behalf of American on May 6, 1986.

Appellant filed an amended complaint on May 28, 1986 alleging:

5. At the express request of the present owner of the vessel a separate, oral agreement was entered into by and between said present owner and the Plaintiff for Plaintiff to make certain repairs, improvements or modifications to said Gemini Lady, for which said present owner would pay additionally and independently from the sales price of the vessel.

The alleged value of these "repairs, modifications or improvements" was $61,009.00. As with the original complaint, paragraph one alleged maritime jurisdiction. A release bond in the amount of $122,018.00 was posted by American on June 9, 1986, which resulted in an order for the release of the Gemini Lady the following day.

Subsequently, American filed motions to dismiss, for the release of the vessel, for vacatur of the release bond, and for imposition of sanctions under Fed.R.Civ.P. 11. All of these motions were granted by the district court based upon the ruling that there was no admiralty jurisdiction, but the dismissal of the action was without prejudice. Counsel for the appellant was ordered to pay $1,500.00 in attorneys' fees to opposing counsel. The district court determined that Hatteras's counsel failed to make a good faith argument for modification of the long standing admiralty principles regarding jurisdiction, and therefore violated Fed.R.Civ.P. 11. *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 662 F.Supp. 1525 (S.D.Fla.1987). Appellant appeals the dismissal and award of sanctions.

## JURISDICTION

As the district court properly found, the law of admiralty is well-settled that a contract for the construction of a vessel does not invoke the subject matter jurisdiction of the federal courts. *Thames Towboat Co. v. The Francis McDonald*, 254 U.S. 242, 244, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920) (holding that work made on a schooner which had been launched but not completed to the point where the vessel could function as intended is not within admiralty jurisdiction).[1] Maritime jurisdic-

1. The construction of the vessel in question in *Thames Towboat Co. v. The Francis McDonald*, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920), began under a construction contract in Groton, Connecticut. After the hull was launched, the original contractor could not continue so Thames Towboat Company (Thames) agreed with the owner to complete the work. The hull

tion does arise, however, when a ship undergoes repairs. *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99, 42 S.Ct. 243, 243, 66 L.Ed. 482 (1922) (finding that conversion of a car float which lacked steering and motor power into a steamer used for amusement purposes constituted repairs). At least one court has attempted to explain this distinction between contracts for construction and contracts for repairs.

> [A] maritime contract is defined to be one having reference to commerce or navigation. The particular element essential to give it a maritime character is direct connection with commercial transactions or navigation; and such connection is lacking in a contract to create a new ship, or, if not lacking entirely, it is remote and contingent, so that it is not perceptible at the time the contract goes into effect as a binding obligation. But whatever is done to or about an existing ship has direct reference to commerce and navigation. A ship *in esse* as a maritime subject gives a maritime character to all transactions directly connected with it. The cases are distinguishable thus: One class, founded upon contracts for the repairing and rebuilding of vessels, holds such contracts to be maritime, because they affect vessels *in esse;* and the other class, founded upon contracts for the building of proposed vessels, holds such contracts to be non-maritime, because they touch maritime subjects only by relation to proposed vessels, the future existence of which is contingent upon performance of the terms of the contract in each case.

*The Manhattan*, 46 F. 797, 799–800 (D.Wash.1891) (quoted in 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty § 189 (7th ed. 1985), for the distinction between construction and repairs). Until a vessel is completed and launched it does not become a ship in the legal sense, and therefore admiralty jurisdiction does not exist. *North Pacific Steamship Co. v. Hall Bros. Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 127, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1918).

The district court found the case of *Dubuque Boat & Boiler Co. v. The Oil Screw Commander*, 251 F.Supp. 923 (W.D.Mo. 1966), to be particularly persuasive. In *Dubuque*, the parties agreed to certain alterations or "extras" which were not in the original specifications, but were agreed upon by the parties as construction progressed. *Id.* at 925–26. Such alterations included redesigning the entire superstructure of the vessel. The court found that the extras were a part of the original construction contract, and therefore the court lacked admiralty jurisdiction. *Id.* at 926.

■ As with *Dubuque*, the case at bar involves extras or customization of the vessel. Appellant attempts to distinguish this action from *Dubuque*, and other cases cited by the court, in alleging that this involves the sale rather than the original construction of the vessel. Appellant's argument is without merit as the law in the Eleventh Circuit is firmly established that neither contracts for construction nor for sale of a vessel are maritime in nature. *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44, 47 (5th Cir.1980); *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967–68 (5th Cir.1971).[2] Likewise, appellant's contention that the oral contract provides the basis for admiralty jurisdiction is unpersua-

---

was towed to New London where labor and materials were supplied for which Thames brought the suit. Subsequently, with the vessel still incomplete, the Francis McDonald was towed to Hoboken where she was completed by yet a third company. As she was delivered, the masts were not in, the bolts, beams and gaff were not installed, and the forward house was not constructed. At this point the Francis McDonald "was not 'in condition to carry on any service.'" Thirty or forty days were required to complete the vessel, which was in addition to the six weeks Thames had spent on her. *Id.* at

243, 41 S.Ct. at 65. These are the facts upon which the Court concluded that this work carried out by Thames was necessary to "bring the vessel into a condition to function as intended," and therefore was not within the purview of admiralty jurisdiction. *Id.* at 245, 41 S.Ct. at 66.

2. All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

sive. We agree with the district court that even if the alleged oral contract did exist, it was still a part of the original sale and/or construction of the vessel. American's intent was for this vessel to be customized according to its specifications in order that the Gemini Lady would meet American's needs. Until the customization was completed American would not be satisfied as the Gemini Lady would not be in the "condition to function as intended." *Thames Towboat,* 242 U.S. at 245, 41 S.Ct. at 66. If the yacht originally had been in the condition to function as desired by American the customization would never have been ordered. We conclude that all of the work was completed as a part of the sale and/or construction of a new vessel, and therefore it does not invoke the maritime jurisdiction of the federal courts.

## SANCTIONS

In addition to the motion to dismiss, the claimant moved for imposition of sanctions against appellant's attorney under Fed.R. Civ.P. 11. American charged, among other things, that appellant's counsel failed to investigate the underlying facts to the original verified complaint and filed this action which was not warranted by existing law. The district court concluded that any problems with the original verified complaint were corrected by the filing of the amended complaint and therefore Rule 11 sanctions were not justified. As to the amended complaint, the court found it to be "a horse of a different color" and held:

> The clear facts of this case, considered together with what has been established law in this country since the nineteenth century, should have dissuaded an attorney from making a federal case out of this matter. While Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," *id.,*[3] plaintiff's counsel did not make a good-faith argument for modification of these long-standing admiralty principles but rather focused his legal

energies on arguments about the alleged oral contract. This conduct comes within the scope of Rule 11 and is, in the court's estimation, deserving of sanction.

*Hatteras of Lauderdale,* 662 F.Supp. at 1528–29.

In *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987) (en banc), this court established the scope of review for Rule 11 cases.

> With respect to the scope of appellate review, we find that the following approach is the correct one: Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion; on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to *de novo* review by this court.

*Id.* at 1556 (footnote and citation omitted). A brief discussion of *Donaldson* is merited as it is controlling of the case at bar.[4] Jarrell Donaldson sought a divorce from his wife Jurldine Donaldson in the Georgia state court. During the pendency of that litigation Jurldine filed suit in federal court "alleging that various persons conspired under color of state law to unlawfully expedite the divorce proceedings, terminate her marriage, and prevent her from visiting and perhaps reconciling with her husband, thereby depriving her rights under the Fourth and Fourteenth Amendments without due process of law." *Id.* at 1554. The defendants filed a motion to dismiss and for imposition of an award for attorneys' fees. At a hearing on the motions to dismiss, the question of whether the allegations were based in fact became the main focus of the proceeding. The district court, after considering matters outside the record, decided to treat the motions to dismiss as motions for summary judgment and asked all counsel to supplement the record within one week, if they so desired. Subsequently, the district court granted the summary judgment on the defendants'

---

**3.** *Id.* refers to Fed.R.Civ.P. 11 advisory committee's notes.

**4.** The district court did not cite *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987), as it was decided on the same day, June 24, 1987.

behalf. The court also found sanctions to be warranted under Rule 11 due to plaintiff's counsel's failure to proffer support for the allegation that the complaint was well grounded in fact. *Id.*

In reversing the summary judgment, this court found that the plaintiff had not been granted the requisite ten days notice of the court's decision to treat the motions to dismiss as motions for summary judgment. We were also compelled to reverse the award of sanctions. Since the district court failed to allow plaintiff's counsel a full ten days to proffer support for the opposition to the summary judgment, the district court was ordered to wait for the expiration of such time period before deciding if Rule 11 sanctions were appropriate. We then proceeded to set the guidelines which courts should follow when determining whether sanctions are warranted. *Id.* at 1555.

■ Following the *Donaldson* standard of review we find that there was no abuse of discretion on the part of the district court. In fact, this case exemplifies the type of situation Rule 11 was designed to prevent. When Rule 11 was amended in 1983 the Advisory Committee on Civil Rules stated their reasons for the changes:

> The new language is intended to reduce the reluctance of courts to impose sanctions, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.... Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.

Fed.R.Civ.P. 11 advisory committee's notes (citations omitted).

As heretofore discussed, the law is very clear that a contract for construction or sale of a vessel is not maritime in nature. Although the act of "customization" is not specifically mentioned in the case law, it is obvious that this work was carried out as a

part of the original sale.[5] In a situation such as this, it is counsel's responsibility to either refrain from filing an action over which the federal court obviously lacks jurisdiction, or come forth with a good faith argument for the extension or modification of the existing principles. Since counsel brought the suit and has failed to assert a meritorious argument for a modification of the existing law, we conclude that the imposition of sanctions was proper. The judgment of the district court is accordingly affirmed.

## ATTORNEYS' FEES

On April 11, 1988, approximately two weeks prior to oral argument before this court, appellee filed a motion for attorneys' fees and costs associated with this appeal. Appellee claims that this court should consider the appeal of the district court's order as a further violation of Rule 11. The basis of appellee's assertion rests upon the district court's determination that counsel should not have made a "federal case" out of this matter. Appellee contends that this case was clearly outside the bounds of admiralty jurisdiction at the time of filing and that the appeal of the same demands the further imposition of attorneys' fees.

■ Pursuant to Fed.R.App.P. 38 this court has the power to impose sanctions for a frivolous appeal. This appeal, however, by appellee's own admission, involves "a relatively novel matter." In the "Statement Regarding Oral Argument," appellee notes that although the jurisdictional question is well-settled and oral argument was not needed, the Rule 11 question is important:

> Appellee does however see a useful purpose would be served by granting oral argument with regard to Rule 11 Sanctions imposed against Appellant's counsel. Rule 11 is now a more used tool. The 1983 Amendment thereto has opened the way for district courts to impose sanctions on attorneys who fail to live up to the standards prescribed by the Feder-

---

**5.** Apparently counsel was aware of the construction/sale versus repairs distinction as he alleged repairs in the amended complaint, which prevented a jurisdictional attack on the face alone.

al Rules of Civil Procedure. *This issue is a relatively novel matter.*

Appellee's Brief at II (emphasis added).

In order to appeal this relatively novel matter of sanctions imposed upon counsel in filing a suit for which there was no basis for jurisdiction, appellant's counsel necessarily was required to argue the jurisdiction issue. Until we reviewed the jurisdictional question we could not have passed upon whether the imposition of sanctions was appropriate. Since the Rule 11 issue was not frivolous, as appellee has acknowledged, attorneys' fees incurred on appeal are not warranted on the jurisdictional question upon which the sanctions were based. Therefore, the motion for attorneys' fees is denied.

Appellee is entitled to taxable costs.

AFFIRMED.