Birdie Mae DAVIS, et al., Plaintiffs,

v.

Nettie CARL, Clarence Davis, Cleveland A. Flott, Adell F. Hall, Earl C. Henry, Brenda F. Howard, James Weldon Johnson, John K. Kelly, Betty S. Moore, James Mosley, Simuel L. Robinson and Santee Gamble, Jr., Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, William B. Crane, Charles E. McNeil, President, Jack C. Gallalee, Arthur Smith, Jr., and Kenneth Reed, Members, Cranford H. Burns, Superintendent, Defendants–Appellees.

No. 89–7305.

United States Court of Appeals, Eleventh Circuit.

July 19, 1990.

See also 872 F.2d 1563.

Henry H. Caddell, Thirty, Maples, Brunson & Caddell, Thomas H. Figures, Mobile, Ala., Jeremiah A. Collins, Robert H. Chanin, Andrew D. Roth, Bredhoff & Kaiser, Washington, D.C., for appellants.

Robert C. Campbell, III, Frank G. Taylor, Sintz, Campbell, Duke, Taylor & Cunningham, Mobile, Ala., for defendants-appellees.

Before JOHNSON, Circuit Judge, HILL *, Senior Circuit Judge, and HENLEY **, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellants, twelve Alabama public school teachers, appeal the district court's imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Although the appellants do not challenge the district court's ruling on the merits, they contend that the court's fee award was improper. They also contend that the district court failed to afford them the due process protections required by this court's decision in *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987). We agree with appellants that the district court's imposition of sanctions was improper.

### FACTS

The appellants are twelve Alabama public school teachers whom the Board of School Commissioners of Mobile County, Alabama ("School Board") transferred, purportedly in order to comply with a desegregation order that the district court had already issued in this lawsuit. The general purpose of that Consent Order, issued on June 27, 1988, was "to eliminate any remaining vestiges and effects of the prior dual, segregated system of education operated by defendants' predecessors in accordance with the State of Alabama's requirement of compulsory segregation of the races in the public schools.[1]

The 1988 Consent Order sought to upgrade two high schools in the Mobile County School System—Blount High School and LeFlore High School. With regard to Blount High School, the Order obligated the Board to make "appropriate professional staff changes." The Order also provided that LeFlore High School would become a full-time magnet school,[2] and that the School Board would select and assign its staff in the same manner "as for other magnet programs to be developed and implemented in Mobile County."

During the summer of 1988, (after the entry of the 1988 Consent Order), the School Board vacated all of the faculty positions at Blount and LeFlore High Schools, interviewed applicants for the vacant positions, and filled those positions from among the applicants. The appellants are eleven former teachers at Blount High School, and the former Assistant Principal

---

* *See* Rule 34–2(b), rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The underlying desegregation lawsuit began in March, 1963, and the 1988 Consent Order was the latest in a series of orders issued by the federal courts in an effort to desegregate the Mobile County School System. For a discussion of the background and early history of this lawsuit, *see Davis v. Board of School Commissioners*, 517 F.2d 1044 (5th Cir.1975).

2. The 1988 Consent Order defines a magnet school as one "which offers its students a complete educational program meeting all state requirements appropriate to their grade level, as well as opportunities for additional study in the area of its program emphasis or theme."

of LeFlore High School, all of whom the School Board involuntarily transferred to another high school in the Mobile County School System, after it failed to place them in vacant positions at their original schools.

## PROCEEDINGS IN THE DISTRICT COURT

On September 23, 1988, the appellants filed petitions with the district court challenging their transfers. The petitions alleged that the transfers violated the Alabama Teacher Tenure Law, Code of Ala. Tit. 51, §§ 355–361, in that (1) they bore "no rational relationship to the goals set out in [the 1988 Consent Order] of strengthening the faculty and curriculum at [Blount and LeFlore] High School[s]," (2) they were "otherwise arbitrary and/or based upon personal or political reasons, and (3) [t]he reasons articulated by the School Board for the transfers [i.e., compliance with the 1988 Consent Order] are false." To support their contentions, the appellants relied on the Fifth Circuit's holding in *Mills v. Birmingham Board of Education*, 449 F.2d 902, 904 (5th Cir.1971), that an Alabama teacher's "complaint ... that ... [her] transfer was not necessitated by the district court's [desegregation] order, but was made ... in unnecessary violation of the Alabama Teachers Tenure Act," stated a federal cause of action.

On March 30, 1989, the district court held an evidentiary hearing to consider the appellants' claims; the appellants' evidence chiefly concerned their own qualifications and the nature of the School Board's procedures. At the conclusion of that hearing, the district court ruled against appellants on the merits, declaring (1) that the appellants had offered no testimony regarding the transfer of five of the teachers, and (2) that as to six other appellants, there was no evidence that the Board had "acted arbitrarily or by any means of discrimination in fulfilling its obligations under" the 1988 Consent Order. The court also stated that it would "take under advisement the question of what to do about the attorney's fees in this matter."

On March 31, 1989, the district court issued an order dismissing appellants' petitions on the merits; the court also imposed sanctions (i.e., attorneys' fees) on appellants:

> The court further finds and concluded that no legitimate basis, either factual or legal, existed for these transfer contests. Consequently, it is ORDERED that costs, including reasonable attorney's fees, be TAXED against the aforementioned petitioners.

The court at no time characterized these costs as Rule 11 sanctions; the appellants filed this appeal on the assumption that these are what the district court intended.

## DISCUSSION

The appellants begin by challenging the district court's conclusion that they had no legitimate factual or legal basis for contesting their transfers. The appellants also contend that the district court failed to afford them adequate notice or an opportunity to explain their actions or to contest the imposition of sanctions.

### Factual and Legal Basis for Appellant's Claims

1. Factual Basis

■ Because of this court's holding in *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987) (en banc), we cannot examine the procedural safeguards due the appellants without first reviewing the district court's conclusion that the appellants' claims lacked *any* factual basis. In *Donaldson*, we noted that "[d]ue process requires that the attorney (or party where applicable) has fair notice of the possible imposition of Rule 11 sanctions and of the reason for their imposition." 819 F.2d at 1559–1560. We also held, however, that "[i]f an attorney is said to have submitted a complaint without any basis in fact, *Rule 11 alone should constitute sufficient notice* of the attorney's responsibilities, since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact." *Donaldson*, 819 F.2d at 1560. (emphasis supplied). If the district court, therefore, properly found that the appellants' claims

lacked any factual basis, then it had no obligation to afford the appellants the procedural safeguards of notice and an opportunity to be heard. With this qualification in mind, we now examine the factual underpinnings of the appellants' claim.

■ Appellants contended at trial that "the stated reason for their transfer[s] [was] false," that the transfers were arbitrary, and that these transfers were not necessary to comply with the 1988 Consent Order. At trial, the appellants produced evidence designed to show that the School Board's procedures were perfunctory, *ad hoc*, and not, as the 1988 Consent Order required, pursuant to a well-designed plan. Thus the appellants produced testimony that the School Board reduced its "guidelines" to writing only *after* it had transferred the appellants. Six of the appellants also testified, moreover, that the selection committee never questioned whether they met the specific criteria listed in the Board's guidelines. Finally, appellants presented evidence that the selection committee conducted its interviews, and made its recomendations, without reference to past performance evaluations or to other similar information contained in the personnel files of the various applicants.

The appellants also introduced some evidence that they were more qualified than several of the teachers that the Board assigned to Blount High School. For example, appellants showed that the School Board replaced the appellant James Mosely, who was certified to teach industrial arts, with an individual who was not a certified industrial arts teacher, and whom the Mobile County School System had previously terminated for cause. Appellants also showed that the Board replaced the appellant Brenda Howard, who had eight years experience teaching learning disabled students, with an individual who again was not certified to teach learning disabled students, and who apparently lacked "a command of standard English." Finally, appellants showed that the School Board re-

placed appellant Clarence Davis, who had a master's degree in mathematics, and who had thirty years of teaching experience at Blount, with an individual without a master's degree, and who had received a "needs improvement" performance evaluation the previous year.

Appellants also presented general evidence as to the qualifications of several other appellants. Appellants showed, for example, that the previous year the peers of appellant Cleveland Flott had selected him as teacher of the year, and that the Blount principal had presented him with a letter of commendation. Similarly, appellants showed that appellant Betty Moore had initiated a new vocational program that had assisted students in securing jobs within the community.[3]

We also note that the district court overruled objections as to the relevancy of this sort of evidence, stating that "... the process was to secure the best that the School Board was able to secure from those available *and to the extent that the School Board may not have done that, then the Court will be interested in it.*" (Emphasis supplied). Although we may agree with the appellees that "the petitioners' evidence consisted largely of self-serving evidence of how good a teacher they considered themselves to be and how long they had been at their school before being transferred[,]" we must also agree that the appellants presented evidence, albeit *weak* evidence, that the School Board's transfers were arbitrary. We note as well that appellants apparently did so with the full cooperation of the district court.

Of course, previous opinions from this court have held that factually groundless allegations merit Rule 11 sanctions. *See e.g., Collins v. Walden,* 834 F.2d 961 (11th Cir.1987). In our view, however, those opinions derived from factual circumstances in which, unlike the present case, plaintiffs offered *no* evidence to support their allegations. In *Collins,* for example, the appellant made the unlikely claim that two

---

**3.** Although appellants produced no witnesses to testify concerning the qualifications of five of the appellants, they argue that their evidence regarding the restaffing procedures used at Blount and LeFlore had "across-the-board application."

lawyers and a judge's secretary had conspired to deprive him of a fair recusal hearing by concealing the true condition of a terminally ill judge. Although the district court had already dismissed this unusual claim, the appellant simply repeated it in a second lawsuit, although this time alleging a different group of conspirators. In *Collins*, we affirmed the district court's imposition of Rule 11 sanctions in a case in which the appellant offered *no* cognizable evidence of a conspiracy between any of the defendants. The evidence in *Collins* was patently frivolous; the evidence in the instant case was merely weak. We might agree that the appellants used poor judgment in pursuing their allegations. We do *not* perceive in the appellants' conduct, however, the deliberate indifference to obvious facts that compels a court's resort to Rule 11 sanctions. We hold, therefore, that the district court abused its discretion by concluding that the appellants' claims were factually groundless.

### 2. Legal Claims

■ In the instant case, the appellants contend that we should characterize their claims as, at worst, a "good faith argument for the extension ... of existing law." Recently, in *Cooter & Gell v. Hartmax Corp.*, —— U.S. ——, ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990), the Supreme Court held that appellate courts "should apply an abuse-of-discretion standard in reviewing *all* aspects of a district court's Rule 11 determination." (Emphasis supplied). Thus, we must begin our analysis by determining whether the district court properly determined that the appellants' claims were legally groundless.

The appellants have alleged that their transfers violated the Alabama Teacher Tenure Law because, (according to appellants), the evidence did not sustain the School Board's reasons for their transfers (i.e., to comply with the mandate of the 1988 Consent Order). The appellants assert that they based their claims on the

Fifth Circuit's holding in *Mills v. Birmingham Board of Education*, 449 F.2d 902 (5th Cir.1971).

In *Mills*, the Birmingham School Board transferred a tenured Alabama teacher in asserted compliance with a federal school desegregation order; the teacher challenged her transfer in Alabama state court on the ground that the transfer "was not necessitated by the district court's [desegregation order], but was made for political or personal reasons in violation of the Alabama Teacher Tenure Act." *Mills*, 449 F.2d at 904. The defendant school board removed the case to federal court and the district court dismissed the action for failure to state a claim upon which relief could be granted. The Fifth Circuit reversed.[4]

In its opinion, the Fifth Circuit emphasized that state tenure laws "remain fully valid, mandatory and binding upon state authorities to the extent that compliance with them does not nullify or frustrate the supreme commands of the Federal Constitution." *Mills*, 449 F.2d at 905. As the court stated:

> If the plaintiff-teacher can show that it was possible for the School Board to comply with the provisions of the Alabama Teacher Tenure law which forbids transfers for personal or political reasons while carrying out the order of the court; that is, she can show that her transfer—assertedly in compliance with the district court's order—was in fact motivated by nepotism or personal or political improprieties rather than court ordered racial balance, she would establish a right to reinstatement to her former teaching station and possibly to back pay.

449 F.2d at 905.

As did the plaintiffs in *Mills*, the appellants in this case alleged that their transfers violated a section of the Alabama Teacher Tenure Law. Although the *Mills* plaintiffs alleged that the School Board transferred them "for political or personal reasons," that same tenure law also invalidates transfers that are "arbitrarily un-

---

**4.** The Eleventh Circuit in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

just." *See State Tenure Commission v. Pike County Board of Education,* 349 So.2d 1173, 1175 (Ala.App.1977), ("If the evidence does not sustain the reason given [for the transfer] the transfer is [arbitrarily unjust and] not sustained [citations omitted]"). Appellants now contend that since the Fifth Circuit's holding in *Mills* ratified one section of the Tenure Law, we should construe their present allegations, which involve a different section of that same law, as, at worst, a good faith argument for the extension of existing law.

■ We agree. Although we have in the past viewed certain claims as legally groundless, we have done so only in circumstances far more egregious than those involved here. For example, in *United States v. Milam,* 855 F.2d 739, 743 (11th Cir.1988), we affirmed the imposition of sanctions when the appellants had ignored the "plain language of the applicable statute of limitations." In *Jorgenson v. County of Volusia,* 846 F.2d 1350 (11th Cir. 1988), we affirmed the imposition of sanctions when the appellants deliberately failed to cite controlling authority contrary to their position:

> The appellant purported to describe the law to the district court in the hope that the description would guide and inform the courts decision. With apparently studied care, however, they withheld the fact that the long-awaited decision by the Supreme Court of Florida had been handed down. This will not do.

*Jorgenson,* 846 F.2d at 1352. Finally, in *Hatteras of Lauderdale v. Gemini Lady,* 853 F.2d 848, 852 (11th Cir.1988), we affirmed the imposition of sanctions where the plaintiff ignored the application of a "very clear [law] that a contract for construction or sale of a vessel is not maritime in nature." In *Hatteras,* we concluded that the district court properly imposed sanctions since counsel "failed to assert a meritorious argument for the modification of the existing law." 853 F.2d at 852. Here, of course, counsel expended considerable effort on an argument that attempted to expand the limits of controlling case law. As we noted in *Donaldson,* the drafters of Rule 11 never intended for its language to deter innovative claims:

Nor is Rule 11 intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law.... It does not mean the end of doctrinal development, novel legal arguments, or cases of first impression. The Advisory Committee note specifies that the rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."

*Donaldson,* 819 F.2d at 1561.

In the instant case, this litigation has consumed the attention of the courts—particularly the district court—for almost a generation. The district judge's delicate, difficult mission was to order or approve the restructuring of a school system originally designed to accomodate and enforce racial segregation. We can appreciate the judge's response to meritless litigation which, had it succeeded, would have undone the constructive work that the court had already accomplished. Nevertheless, under the facts and the law as we apply it, we will not affirm the sanctions imposed by the district court in this case.

■ Although we agree that counsel's professional judgment and common sense should discourage certain claims, in most cases we prefer that an attorney feel free to exercise that judgment without fear of reprisals should his lawsuit miscarry. As we see it, Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment. We therefore reverse the judgment of the district court regarding the legal basis of the appellants' claim.

## CONCLUSION

Because of our holdings on the factual and legal grounds of the appellants' claim, we need not address the appellants' arguments on due process.

We REVERSE the judgment of the district court.

REVERSED.