[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2001
THOMAS K. KAHN
CLERK

_____

No. 97-2591, 97-3153, 97-3566

_____

D. C. Docket No. 95-30545-CV-LAC

DIESEL "REPOWER", INC.,
f.k.a. DIESEL "REPOWER" SYSTEMS, INC.,

Plaintiff-Appellee,

versus

ISLANDER INVESTMENTS LTD.,

Claimant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(November 9, 2001)**

Before TJOFLAT, GODBOLD and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff Diesel "Repower" Inc. entered into a contract with Defendant

Islander Investments. The contract required Diesel to "repower" Islander's vessel

Hero.  To "repower" Hero Diesel was required to recondition and install a diesel engine, including a transmission and propulsion system.  In return for "repowering," the contract required Islander to pay Diesel $45,000 for a reconditioned diesel engine and propulsion system and an estimated $5,000 to $10,000 for labor, of which $45,000 was pre-paid.

The district court found that Diesel reconditioned an engine and attached a false engine plate to the engine.  However the engine smoked and produced inadequate horsepower.  Diesel continued working on the engine.  While Diesel worked on the engine Islander allegedly failed to pay the balance on outstanding invoices.  Therefore, Diesel ceased work.

## Procedural History

Diesel filed its complaint on December 1, 1995 invoking admiralty jurisdiction.  The in rem complaint attempted to enforce a maritime lien and recover the balance due under the contract.  The complaint alleged that Islander breached the contract by not paying for engine components, materials, supplies and labor.

Islander, also invoking admiralty jurisdiction, answered and filed counterclaims of breach of contract, fraud, and negligence.  The counterclaims alleged that Diesel breached the contract by negligently designing, reconditioning,

manufacturing, and assembling the engine and propulsion system, and by installing the defective engine improperly in an untimely manner. Islander alleges that Diesel's actions caused Islander damage. The alleged damages include the failure to receive the "repowered" engine, the cost of additional work on Hero, the cost of removing the defective engine, the loss of use of Hero, shipyard and docking cost, and the cost of purchasing and installing a new engine.

On July 29, 1996 the district court entered an order stating that the case would be set for trial. On June 30, 1996 discovery ended. The day discovery ended Islander filed a motion for leave to amend the pleadings. The motion requested that the court allow Islander to (1) change the style of the case; (2) provide an alternative basis for recovery of punitive damages; and (3) assert that, pursuant to the saving to suitors clause, the court should apply Alabama state law and not federal admiralty law.

Islander brought its proposed amended pleadings under diversity jurisdiction and admiralty's saving to suitors clause. However, it asserted the identical claims as originally pleaded under admiralty jurisdiction. Count one of Islander's answer and counterclaims states that Diesel was required to replace a Tandem Drive Detroit Diesel propulsion system. Islander says that Diesel designed, manufactured, reconditioned, assembled, sold, delivered and installed a propulsion

3

system that was not capable of turning Hero's propeller at a speed necessary for safe, economical, and seaworthy operation. Islander also says that it needed Hero immediately and Diesel failed to give the contract "Priority Vessel Down" status. Islander asserts that because of Diesel's actions it incurred expenses in making necessary alterations, repairs and other modifications.

Diesel objected to Islander's motion for leave to amend the pleadings.

The district court granted the motion in part and denied it in part. It granted the motion in part thus allowing the name of the plaintiff to be changed from "Diesel Repower Systems, Inc." to its new corporate name "Diesel Repower, Inc." The court denied the remainder of the motion because (1) the amendment regarding punitive damages would expand the factual basis of Islander's causes of action and (2) the amendment regarding the substantive law would be futile because federal maritime law governs the case.

The court conducted a bench trial and found that Diesel was not tortious or malicious but that it breached the contract. The court found that Diesel breached the contract because Diesel did not change the pistons to comply with manufacturer's specifications; the cylinder head assembly was not set up to manufacturer's specifications; and the transmission was not the type specified in the contract or its equivalent and could not handle the level of horsepower that the

4

engine was supposed to produce. Next, the court found that the contract's limitation on liability clause was applicable. Therefore the court entered judgment for Islander in the amount of $45,000 and ordered Islander to return the engine to Diesel.

After the court entered its judgment, Islander filed suit in Alabama state court against Diesel's president personally alleging: (1) fraud in the inducement; (2) fraud in the performance; (3) fraudulent concealment; (4) a pattern or practice of fraudulent activity; and (5) fraudulent transfer. In federal district court Diesel filed a motion to enjoin Islander from prosecuting the state court action. The district court granted Diesel's motion to enjoin on September 12, 1997 and wrote "order to follow." Islander appealed. On December 12, 1997 the district court entered an order that clarified its September 12, 1997 order and granted in part and denied in part the motion to enjoin. The district court enjoined counts 1 through 4 but not count 5.

On May 6, 1999 Diesel filed a suggestion of bankruptcy. Accordingly, on June 4, 1999 this court stayed this appeal pursuant to 11 U.S.C. § 362(a). The bankruptcy case was closed on May 9, 2001. Therefore by operation of law the stay has been lifted and we proceed. See 11 U.S.C. § 362(c).

Motion for Leave to Amend the Pleadings

Islander raises nine issues on appeal. First, we consider whether the court erred in denying the motion for leave to amend the pleadings.

We use the abuse of discretion standard when reviewing a district court's decision on whether to grant a motion for leave to amend the pleadings. See Thomas v. Farmville Mfg. Co., Inc., 705 F.2d 1307 (11th Cir.1983). The court must grant litigant's motion for leave to amend the pleadings "when justice so requires." Fed.R.Civ.P 15(a). The Supreme Court reasoned:

> In the absence of any apparent or declared reason– such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

By its amendment Islander wanted to convert its counterclaims brought under admiralty jurisdiction, and thus subject to admiralty law, to claims brought under admiralty's saving to suitors clause and thus governed by state law. In the motion for leave to amend the pleadings Islander asserted the identical claims originally pleaded under admiralty jurisdiction. The district court denied the motion on the ground that the amendment would not change Islander's cause of action or the application of federal law as the substantive law of the case. Thus, allowing the amendment would be futile.

6

In this appeal Islander asserts that the district court abused its discretion in denying the motion for leave to amend the pleadings because (1) the motion was filed more than three months before the trial, and did not assert new claims but recast its current claims as state law claims, (2) Diesel did not object on prejudice grounds, and (3) the court did not find the amendment would be prejudicial.

Islander's assertions miss the essence of the district court's order. The district court reasoned that to allow Islander's amended answer and counterclaims would be futile because substantively it did not matter whether the case was brought under admiralty or diversity jurisdiction. The claims were the same and whether brought under admiralty or diversity jurisdiction the substantive law that the court must apply was admiralty law.

Thus the issue is whether the district court erred when it held that admiralty law would control the substantive portion of the case even if the district court granted the motion for leave to amend the pleadings and thereby allowed Islander to proceed under diversity jurisdiction. If substantive admiralty law controlled then the court did not abuse its discretion when it denied the motion for leave to amend the pleadings.

## Jurisdiction

We turn to the analysis of whether the district court correctly held that

admiralty law would apply under both admiralty and diversity jurisdiction. The district court has original jurisdiction "exclusive of the courts of the States of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The federal court has exclusive jurisdiction over in rem actions. See American Dredging Company v. Miller, 510 U.S. 443, 446-47 (1994). The saving to suitors clause allows an in personam action, whether the action is instituted in a state court or in a federal court under diversity jurisdiction or in a federal court under maritime jurisdiction. See Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123 (1923). However, the action will be governed by federal principles of admiralty and maritime law that control the respective rights and liabilities of the parties.[1] See Everett v. Carnival Cruise Lines, 912 F.2d 1355, 1358 (11th Cir. 1990) (stating federal maritime law controls when the tort occurs on navigable waters, even when diversity is alleged as the basis for jurisdiction).[2]

Islander's claim is for breach of a repair contract. A contract to repair a vessel invokes admiralty jurisdiction. See Hatteras of Lauderdale, Inc., v. Gemini Lady, 853 F.2d 848, 849-850 (11th Cir.1988).

---

[1]This is the so-called "Reverse-Erie Doctrine."

[2]The district court correctly held that it had admiralty jurisdiction because the situs and nexus tests were met. See Executive Jet Aviation, Inc., City of Cleveland, 409 U.S. 249 (1972).

Islander's proposed amended pleading asserted the identical breach of contract counterclaim as originally pleaded under admiralty jurisdiction. The contract required Diesel to "repower" Hero. In count one of Islander's answer and counterclaims Islander states that Diesel was required to replace a Tandem Drive Detroit Diesel propulsion system. Islander claims that Diesel designed, manufactured, reconditioned, assembled, sold and delivered to Islander a propulsion system that was not capable of turning Hero's propeller at a speed necessary for safe, economical, and seaworthy operation. Islander also says that it needed Hero immediately and Diesel failed to give the contract "Priority Vessel Down" status.

From Islander's pleadings it is abundantly clear that the contract required Diesel to replace the engine, transmission and propulsion systems. Logic and precedent dictate that replacement of these parts and systems falls under repair. See New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99 (1922) (finding that conversion of a car float which lacked steering and motor power into a steamer used for amusement purposes constituted repairs). Since this case involves a vessel repair contract admiralty jurisdiction is proper.

Substantive Admiralty Law

Next we must determine if substantive admiralty law would govern this case

9

if converted to a saving to suitors clause case.  We review <u>de novo</u> conclusions of law.  See <u>Godfrey v. BellSouth Telecommunications, Inc.</u>, 89 F.3d 755, 757 (11th Cir.1996).  Islander asserts that admiralty law would not apply and that the district court should have held that Alabama state law would apply pursuant to admiralty's saving to suitors clause and, therefore, the motion to amend was erroneously denied.

The saving to suitors clause does not authorize the application of substantive rights created by state statutes that change substantive admiralty and maritime law.  See <u>American Dredging</u>, 510 U.S. at 447 (citing <u>Madruga v. Superior Court of Cal., County of San Diego</u>, 346 U.S. 556, 561, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954)).  To determine what law to apply we use a balancing approach.  See <u>Steelmet, Inc. v. Carbibe Towing Corp.</u>, 779 F.2d 1485, 1488 (11th Cir.1986).

> One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned.  If none is to be fashioned, the state rule should be followed.  If there is an admiralty-state law conflict, the comparative interest must be considered- they may be such that admiralty shall prevail or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect.

> <u>Id.</u> (internal citations omitted).

In other words, we apply the following analytic framework.  First, we look at the state law that Islander says the district court should have applied.  Second,

10

we determine whether admiralty law conflicts with state law. Here there are two courses. We follow course one if there is not a conflict. Next, we determine whether an admiralty rule is needed, if not, then we apply state law. We follow course two if there is a conflict. Here, if the underlying admiralty policy is weak and its effects are minimal, we apply state law.

Limitation of Liability Clause

Next we apply the above framework to the contract's limitation of liability clause. In determining the applicability of the limitation of liability clause Islander asserts that the district court should have applied Ala. Code § 7-2-203(1)(b) (1975). The code imposes and defines a "good faith" requirement on merchants.[3] See Id. Islander says that the court should have used the "merchant" analysis because the contract was for a sale of goods, instead of the conflicting "businessman" analysis imposed under admiralty law. Because of the conflict between the "merchant" and "businessmen" analysis we must determine if the underlying admiralty policy interest regarding the "businessmen" analysis is weak and its affects are minimal. If so, then the district court should have applied state law. See Steelmet, 779 F.2d at 1488.

---

[3]"'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Ala. Code § 7-2-103 (1)(b).

11

The federal interest in uniformity under admiralty law is great. See Mink v. Genmar Industries, Inc., 29 F.3d 1543, 1548 (11th Cir.1994). The great interest in uniformity extends to the "businessmen" analysis because the analysis is a strong admiralty policy that greatly affects the applicability of limitation on liability clauses for vessel repair contracts. The rationale underlying limitation on liability clauses is that businessmen can bargain the limitation during negotiations and set their ultimate price accordingly. See Edward, 785 F.2d at 888 (citing Jig The Third Corp. v. Puritan Marine Ins. Underwriters Corp., 519 F.2d 171 (5th Cir. 1975)).

Parties to a contract for the repair of a vessel may validly agree to limit the repairer's liability. See Edward, 785 F.2d at 888. To be enforceable, the limited liability clause must clearly and unequivocally indicate the parties' intention. See Edward, 785 at 889. However, the limitation must not absolve the repairer of all liability and must still provide a deterrent to negligence. See Bisso v. Inland Waterways Corp., 349 U.S. 85, 90-91. Also, the parties must be of equal bargaining power to prevent overreaching. See Edward, 785 F.2d at 888 (citing Bisso, 349 U.S. at 91, 75 S.Ct. at 632-33).

In other words, the court must apply a three-step test to determine whether the limitation on liability clause is enforceable. First, the clause must clearly and

unequivocally indicate the parties' intentions. Second, the clause may not absolve the repairer of all liability and the liability risk must still provide a deterrent to negligence. Third, the "businessmen" must have equal bargaining power so there is no overreaching. We will discuss each step in turn.

The clause is a clear and unequivocal indication of the parties' intentions. The limited liability clause states:

> DIESEL REPOWER SYSTEMS, INC. PROVIDES A NINETY DAY MAJOR PARTS REPLACEMENT WARRANTY ON REBUILT TRANSMISSION AND THIRTY DAY MAJOR PARTS REPLACEMENT WARRANTY ON "USED/RECONDITIONED" KTA-1150 ENGINE SHOULD THEY PROVE DEFECTIVE DURING NORMAL OPERATING CONDITIONS. DIESEL REPOWER SYSTEMS, INC. WARRANTY DOES NOT EXTEND TO OR COVER LABOR DOWNTIME, LOSS OF INCOME, SHIPPING COST, FREIGHT DAMAGE(S), ABUSE, ALTERATION, MISAPPLICATION, IMPROPER INSTALLATION (UNLESS CONTRACTED WITH DIESEL REPOWER SYSTEMS, INC.), PUNITIVE, PROGRESSIVE, OR CONSEQUENTIAL DAMAGES OF ANY TYPE. NO OTHER WARRANTY IS IMPLIED, EXPRESSED, RENDERED OR AVAILABLE.

Also, the contract stated at the bottom of each page that "DIESEL REPOWER SYSTEMS, INC.'S TOTAL DOLLAR AMOUNT OF LIABILITY IS THE PURCHASE PRICE OF THE EQUIPMENT SOLD ON THIS INVOICE."

The clause is clear and unequivocal. The clause limits Diesel's liability to a "TOTAL DOLLAR AMOUNT." The amount is the "PURCHASE PRICE OF THE EQUIPMENT SOLD ON THIS INVOICE." The invoice states that the

13

purchase price for the equipment was $45,000. Therefore it is clear and unequivocal that Diesel's liability may not exceed $45,000.

The clause does not absolve Diesel of all liability, and the liability risk still provides a deterrent. Here, Diesel's liability risks included replacing parts free of charge within the warranty period, refunding the $45,000 purchase price of the equipment, and going uncompensated for numerous hours of labor expended on replacement of parts under the warranty or on original installation. In this fact-specific inquiry, we find that Diesel's liability risks compared to the overall obligations under the contract provide a sufficient deterrent.

The clause is enforceable because there was no overreaching. There was no overreaching because the "businessmen" possessed equal bargaining power upon entering the contract. John Miller, a director of Islander, sought out Diesel, negotiated, and executed the contract. Miller's approach to the process of purchasing the vessel and "repowering" it is an indication of his sophistication as a businessman and his familiarity with the marine industry. Diesel was engaged in the business of "repowering" engines for marine use. The "businessmen" were of equally bargaining power.

The three-step test, which incorporates the "businessmen" analysis, greatly affects the limitation of liability clause applicability. The limitation of liability

14

clause allows businessmen to bargain for and ultimately set the price of vessel repair contracts. The admiralty interests in allowing businessmen to uniformly bargain for and ultimately set the liability risks and price of vessel repair contracts are great. Therefore, we conclude that substantive admiralty law controls the limitation of liability clause analysis that is applicability to this case.

## Islander's Fraud Claim

Islander asserts a fraud claim against Diesel. In assessing the fraud claim we use the balancing approach outlined above. See Steelmet, 779 F.2d at 1488. Admiralty law incorporates common law fraud. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1971); Wong Shing v. M/V Mardina Trader, 564 F.2d 1183 (5th Cir. 1978).[4] The district court correctly applied principles of common law fraud to this case and found that Diesel was neither tortious nor malicious. Therefore the district court did not commit reversible error regarding Islander's fraud claim.

## Islander's Negligence Claim

Islander argues that the district court erred when it held that Diesel's conduct was not negligent in its breach of contract. This argument is misplaced. Whether Diesel was negligent relates to whether the limitation of liability clause is

---

[4]Islander did not cite and the court did not find any cases to the contrary.

15

enforceable.  See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986) (holding that a manufacturer in a commercial relationship has no duty under negligence when the only injury is to the product itself).  "Such a case, the Supreme Court said, would most naturally be understood as a warranty claim, and should be governed by the contract for which the parties bargained and the contract law."  Mink, 29 F.3d at 1549 n.9 (citing East River, 476 U.S. at 872).

Since admiralty law controls the limitation of liability clause analysis, the fraud claim and the negligence claim, Islander's motion for leave to amend the pleadings was futile.  Therefore, the district court did not abuse its discretion when it denied Islander's motion for leave to amend the pleadings.

Motion to Enjoin Prosecution

We use the abuse of discretion standard when reviewing the district court's order on a motion of injunctive relief.  See Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1022 (11th Cir. 1989).

Islander contends the district court's original order improperly granted the motion to enjoin because (1) the court did not specify the grounds for entering the injunction nor the limits of the injunction, (2) the injunction was overly broad because it applied to an alleged fraudulent transaction that occurred post-judgment, and (3) the district court lacked jurisdiction to amend the order because it lost

16

jurisdiction when the notice of appeal was filed.[5]  Alternatively, Islander asserts that the motion should have been denied because counts 1 through 3 were not litigated in the federal action when the district court refused Islander's motion for leave to amend the pleadings.

Islander acknowledges that when it filed its motion for leave to amend the pleadings in the federal action it sought to litigate counts 1 through 3 of its state court action.[6]  Islander argues that these claims are based upon state law and not admiralty law.  This is incorrect.  We hold that federal admiralty law, not state law, applies to Islander's claims.  Islander litigated these claims in the federal action.  Therefore the district court did not err in granting Diesel's motion to enjoin Islander from prosecuting the state court action.

The district court did not commit reversible error.

AFFIRMED.

---

[5]These assertions are without merit because the district court had jurisdiction to amend the order.  Therefore, we look to the second order.  See Fed.R.App.P. 4(a)(2); see also, Virgo v. Riviera Beach Assocs., 30 F.3d 1350, 1356 (11th Cir. 1994).

[6]Islander's argument regarding count 4 is without merit and does not require discussion. The district court did not enjoin count 5 and neither party appealed that decision.  Count 5 is not before this court.  Therefore this opinion has no bearing on count 5.