PRYOR, Circuit Judge:
The main issue presented in this appeal is whether the district court abused its discretion when it dismissed several claims of Daewoo Motor America, Inc., against General Motors Corporation, Suzuki Motor Corporation, American Suzuki Motor Corporation, and GM Daewoo Auto & Technology Co. (GMDAT) on the ground of international comity. Daewoo America complained that its legal rights, as the exclusive distributor of Daewoo vehicles in the United States, were violated after a Korean bankruptcy court approved a sale of the assets and liabilities of the Korean parent company of Daewoo America and the defendants then sold in the United States automobiles manufactured by GMDAT. Daewoo America was a claimant represented by counsel in the Korean bankruptcy proceedings but, after notice, did not object to the sale of the assets and liabilities of its Korean parent. We affirm.
I. BACKGROUND
Daewoo America was incorporated in 1997 as a wholly owned subsidiary of Dae- *1252 woo Motor Co., Ltd. (Daewoo Korea), a South Korean automobile manufacturer. Daewoo America served as the exclusive distributor of Daewoo automobiles in the United States and the exclusive provider of warranty services and replacement parts. On November 18, 1999, Daewoo Korea and Daewoo America entered into an Automobile Purchase and Distribution Agreement. Under the Agreement, Dae-woo Korea agreed to sell to Daewoo America certain “Products” and granted to Daewoo America “the exclusive right to distribute, sell, rent, lease and otherwise dispose of ... and service ... the Products in the United States....” The Agreement also provided that “ ‘Products’ shall mean the motor vehicles provided on Exhibit A attached hereto (as said Exhibit A may be amended from time to time by Seller to add or delete motor vehicle models).” The parties agree that “Exhibit A” never existed and was not attached to the Agreement.
On November 10, 2000, after experiencing financial difficulties, Daewoo Korea filed for bankruptcy protection in Korea under the Korean Corporate Reorganization Act, and the Korean court appointed a receiver. By letter dated November 8, 2000, Daewoo Korea notified Daewoo America of its reorganization plans. The letter included a summary of Korean reorganization law. The letter also warned that creditors must participate in the reorganization and that failure to file a claim would result in a loss of rights.
On November 14, 2002, the Korean bankruptcy court ordered the preservation of the assets of Daewoo Korea. On November 30, 2000, the court ordered the commencement of the reorganization procedure and set the deadline of January 15, 2001, for filing claims. On December 5, 2000, the receiver for Daewoo Korea sent Daewoo America a notice of the filing deadline and guidelines on how to file a claim. In response, Dong Jin Lee, President of Daewoo America, communicated with representatives of Daewoo Korea to obtain assistance with filing a claim in the reorganization proceeding and with employment of an attorney. With the aid of Daewoo Korea, Daewoo America retained the law firm Jin & Lee and executed a Power of Attorney in favor of the firm. Daewoo Korea also appointed agents to act on behalf of Daewoo America in the Korean proceedings. Daewoo America did not object to the appointments.
With the aid of Jin & Lee, Daewoo America filed a proof of claim before the Korean court for approximately $33 million, and on February 3, 2001, filed a supplemental claim for over $45.5 million. On February 26, 2001, the creditors of Dae-woo Korea held a meeting at which they reviewed the claims. Jin & Lee attended the meeting on behalf of Daewoo America. The Receiver objected to most of the claims of Daewoo America, which was notified of the objections by the Korean court. The Korean court also notified Daewoo America that it was required to affirm its claims by filing a claim against the Receiver by the end of March.
Daewoo America then filed a complaint in the Korean court against the Receiver and Daewoo Korea. Daewoo America challenged the objections of the Receiver and sought approval of its claims. The following month, Daewoo America dismissed its complaint. In 2002, Daewoo America filed a second supplemental claim for approximately $1.1 million, which the Receiver approved in its entirety.
Both before and during its reorganization proceedings, Daewoo Korea negotiated with Ford Motor Company and GM about the possibility of a transfer of ownership. In September 2000, Ford withdrew its bid, but negotiations with GM *1253 continued. On September 20, 2001, Dae-woo Korea and GM executed a non-binding Memorandum of Understanding regarding the sale of assets of Daewoo Korea to GM. The Korean court approved the Memorandum of Understanding on September 26, 2001.
Daewoo America contends that it was to be included in the assets to be purchased by GM, and GM affirmatively represented that Daewoo America would continue to distribute automobiles in the United States under the acquisition plan intended by GM. At an automobile convention in January 2002, GM executives allegedly represented that they looked forward to a working relationship between Daewoo America and GM. Daewoo America alleges that it continued to expand its business based on these representations by GM.
On March 27, 2002, the management team of Daewoo America wrote to GM regarding the possible exclusion of Daewoo America from the asset acquisition. The management team expressed its “extreme concerns about the far reaching negative implications of the possible exclusion of ... U.S. operations from the agreements associated with General Motors’ pending-acquisition of certain assets of Daewoo Korea.” The letter also expressed concern about the “potential breach arising from the Automobile Purchase and Distribution Agreement between Daewoo Korea and Daewoo America.”
By a letter dated April 17, 2002, Daewoo Korea notified Daewoo America of a meeting to examine the proposed reorganization plan to be held on May 6, 2002. Dae-woo America also received a letter of proxy and a summary of the proposed reorganization plan. The summary of the proposed reorganization did not refer to the Memorandum of Understanding or the proposed asset transfer. Despite the concerns expressed in the March 27, 2002, letter, Daewoo America executed the proxy and thereby accepted “the Proposed Reorganization Plan filed by the receiver” and granted to “Han Su Pyon, ... an officer of [Daewoo Korea], the full power and authority to exercise its voting rights in the meeting of parties in interest as though exercised by the undersigned.”
On April 30, 2002, GM, Daewoo Korea, and creditors of Daewoo Korea entered into a Master Transaction Agreement (MTA). The MTA contemplated the creation of a new company, GMDAT, to acquire assets and assume liabilities of Daewoo Korea. Among the assets to be acquired were the vehicle manufacturing plants at which the Daewoo automobiles to be exported for sale in the United States were manufactured. Daewoo America was not included in the assets to be transferred. At the May 6, 2002, meeting of the creditors, the creditors voted in favor of the original reorganization plan. The Korean court approved the plan, but requested that the receiver file a modified reorganization plan that reflected the terms of the MTA entered on April 30, 2002.
At the same time, the Receiver for Dae-woo Korea sought permission from the Korean court to terminate the distribution agreement with Daewoo America for nonpayment of approximately $130 million. The Korean court approved the petition of Daewoo Korea on May 6, 2002. The Receiver sent a letter to Daewoo America requesting payment of the outstanding debt, barring which the Distribution Agreement would be terminated.
On April 21, 2002, Daewoo Korea requested permission from the Korean court for Daewoo America to file for bankruptcy in the United States. The Korean court approved the petition, and on May 16, 2002, Daewoo America filed for protection under Chapter 11 in the United States *1254 Bankruptcy Court for the Central District of California. In proceedings before the California bankruptcy court, Daewoo America stated that it “fully intend[ed] to pursue all possible causes of action against Daewoo Korea, GM and others, if appropriate.” In a letter to counsel for GM dated June 7, 2002, counsel for Daewoo America advised that “[Daewoo America] deems any action by GM to distribute automobiles in the United States manufactured at facilities of Daewoo Motor Co., Ltd. to be a violation and infringement of [Daewoo America’s] exclusive right to distribute [Daewoo America] automobile products in the United States.”
On September 12, 2002, Daewoo Korea filed a modified reorganization plan that included the terms of the MTA. Daewoo Korea then sent a letter to its creditors to inform them that a meeting on the modified reorganization plan was scheduled for September 30, 2002. Daewoo America received another proxy form to vote on the modified plan. In response to the filing of the modified reorganization plan, Korean counsel for Daewoo America advised that Daewoo America should file its claim in the Korean bankruptcy proceeding promptly. Counsel for Daewoo America in turn notified its creditors’ committee, which was authorized by the California bankruptcy court to pursue claims against Daewoo Korea on behalf of Daewoo America, of the need to “promptly take the necessary action to protect the estate’s interest.”
On September 30, 2002, the creditors of Daewoo Korea adopted and the Korean court approved the modified reorganization plan, which included the MTA. Despite its notice of the meeting and warnings from counsel, Daewoo America did not attend the September 30 meeting and did not execute a proxy to vote for or against the modified reorganization plan. Daewoo America also did not assert any further claims against Daewoo Korea in the Korean court.
On October 17, 2002, GM, Daewoo Korea, and the creditors of Daewoo Korea closed the transactions under the MTA in which assets of Daewoo Korea were transferred to GMDAT. In February 2003, GM and its affiliate American Suzuki announced that they would begin selling automobiles manufactured by GMDAT in the United States under the Chevrolet and Suzuki brands. GMDAT would continue to use the Daewoo brand name in South Korea and all other countries in which GMDAT had acquired subsidiaries. In July 2003, GMDAT announced that its first shipment of vehicles had been made to North America.
On July 22, 2003, Daewoo America filed an action against GM, GMDAT, Suzuki, and American Suzuki in the California bankruptcy court and alleged fraud, tor-tious interference with contract, tortious interference with prospective economic advantage, aiding and abetting breach of fiduciary duty, violation of the Cartwright Act, unfair competition, unjust enrichment, successor liability, fraudulent transfer, and violation of the automatic stay. Daewoo America sought damages and injunctive relief. The following day, Daewoo America moved the California bankruptcy court to issue a temporary injunction to prevent GM and American Suzuki from importing or selling in the United States any vehicles manufactured by GMDAT. The court denied the motion.
In August 2003, GM and American Suzuki moved to dismiss many of the claims brought by Daewoo America. In October 2003, the motions were denied in part and granted in part. The California bankruptcy court dismissed several claims against GM and American Suzuki with leave to amend, but dismissed the claims for unjust *1255 enrichment and fraudulent transfer without leave to amend.
Daewoo America filed its amended complaint on November 20, 2003. The amended complaint included claims for fraud, tortious interference with contract, tor-tious interference with prospective economic advantage, aiding and abetting breach of fiduciary duty, violation of the Cartwright Act, unfair competition, successor liability, unauthorized post-petition transfer, violation of the automatic stay, and several claims under Florida and Massachusetts statutes. The defendants moved to dismiss the amended complaint on multiple grounds.
The California bankruptcy court dismissed the claims for violation of the Cartwright Act, unfair competition, and violations of the Massachusetts statutes without leave to amend; dismissed the claims under the Florida statutes with leave to amend; scheduled a hearing on the motions concerning the claims of successor liability, unauthorized post-petition transfer, and violation of the automatic stay; and denied the motions as to the claims of fraud, tortious interference with contract, tortious interference with prospective economic advantage, and aiding and abetting breach of fiduciary duty. In February 2004, the Judicial Panel on Mul-tidistrict Litigation transferred the action to the United States District Court for the Middle District of Florida “ ‘for inclusion in the coordinated or consolidated pretrial proceedings occurring’ for In re Daewoo Motor Co., Ltd., Dealership Litigation, MDL Docket No. 1510.”
The transferee district court instructed the parties to submit supplemental briefs on the question of international comity and held a hearing on August 20, 2004. On August 26, 2004, the district court dismissed the amended complaint with prejudice on the ground of international comity. Daewoo Motor Am., Inc. v. Gen. Motors Corp., 315 B.R. 148, 161 (2004). The district court also ruled that the Modified Reorganization Plan and MTA approved by the Korean court did not violate the automatic stay of the bankruptcy of Daewoo America because the Distribution Agreement did not give Daewoo America property rights in vehicles manufactured by GMDAT. Id. at 160.
The district court explained that granting comity to the Korean bankruptcy proceeding was proper for three reasons. First, the district court found that “Korea has significant interest in regulating business activity on its shores.” Id. Second, the district court found that “any differences between Korean and U.S. bankruptcy law are minimal and do not offend U.S. notions of due process.” Id. Third, the district court found that Daewoo America “had notice, as well as a full and fair opportunity to participate in all facets of the Korean bankruptcy process.” Id. The district court concluded that the “fact that [Daewoo America] now seeks to hold GMDAT liable as the successor of [Dae-woo Korea] highlights [Daewoo America’s] true intention — to collaterally attack the entire Korean reorganization process and result.” Id. at 161.
Daewoo America moved the district coui’t for clarification and reconsideration of its order. The district court denied the motion to reconsider, and to the extent clarification was sought, clarified that the order dismissed all of the claims of Dae-woo America against the defendants on the ground of comity. The district court entered final judgment for the defendants. Daewoo America appealed.
II. STANDARD OF REVIEW
The parties dispute the applicable standard of review. Daewoo America ar *1256 gues, on the one hand, that we should apply the de novo standard of review applicable to the review of an order granting a motion to dismiss. The defendants argue, on the other hand, that we should review the decision of the district court only for abuse of discretion.
We agree with the defendants. The principle of international comity applied in this case is an abstention doctrine. Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1238 (11th Cir.2004). “While we ordinarily review the grant of motions to dismiss or summary judgment de novo, see Parks v. City of Warner Robins, Georgia, 43 F.3d 609, 612-13 (11th Cir.1995), ‘a district court’s decision to abstain will only be reversed upon a showing of abuse of discretion.’ ” Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir.2000) (quoting Rindley v. Gallagher, 929 F.2d 1552, 1554 (11th Cir.1991)).
We review the factual determinations of the district court for clear error and questions of law de novo. Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006). “An error of law constitutes an abuse of discretion.” Wexler v. Lepore, 385 F.3d 1336, 1338 (11th Cir.2004). The interpretation of a contract is a question of law that the court reviews de novo. Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir.2005).
III. DISCUSSION
Daewoo America makes four arguments on appeal. First, Daewoo America argues that the district court erroneously concluded that the order of the Korean court that approved the reorganization of Daewoo Korea did not violate the automatic stay of the bankruptcy of Daewoo America. Second, Daewoo America argues that the order of the Korean court was not entitled to comity. Third, Daewoo America argues that, even if comity was appropriate, the order of the Korean court had no effect on the claims that Daewoo America raised against the defendants. Fourth, Daewoo America argues that the California bankruptcy court erred when it dismissed the claim for unjust enrichment with prejudice. We address each argument in turn.

A. The Approval of the Modified Reorganization Plan of Daewoo America by the Korean Court Did Not Violate the Automatic Stay.

The Bankruptcy Code provides that a petition for bankruptcy “operates as a stay ... of ... any act to obtain possession of property of the estate or to exercise control over property of the estate.” 11 U.S.C. § 362(a)(3). “Property of the estate” is defined as “all legal or equitable interest of the debtor in property as of the commencement of the case.” Id. § 541(a)(1). The property of the estate of Daewoo America includes any contractual rights that it owned when it filed for bankruptcy.
Daewoo America contends that the Modified Reorganization Plan impaired its property rights in the exclusive distribution agreement with Daewoo Korea. Dae-woo America contends that the district court erroneously interpreted the Distribution Agreement to conclude that the rights of Daewoo America under the Distribution Agreement were not impaired by the approval of the Modified Reorganization Plan and that the order of the Korean court did not violate the automatic stay. Daewoo America makes two arguments in support of this contention.
First, Daewoo America argues that the district court erroneously relied on federal, rather than California, law when it interpreted the Distribution Agreement. Daewoo America argues that, under California law, “even if the written agreement *1257 of the parties is clear and unambiguous on its face, the trial judge must consider relevant extrinsic evidence that can prove a meaning to which the language of the contract is reasonably susceptible.” Because the district court interpreted the contract under federal law and only looked at the “plain language” of the Distribution Agreement to interpret the contract, Daewoo America argues the interpretation of the district court was erroneous. The problem for Daewoo America is that it waived this argument.
Daewoo America failed to raise the choice of law in its arguments and motions before the district court, and Daewoo America failed to raise any question regarding the use of federal law in its motion for reconsideration of the order of the district court. See William Penn Life Ins. Co. v. Sands, 912 F.2d 1359, 1362 n. 2 (11th Cir.1990). On the contrary, in its motion, Daewoo America stated that it “[did] not seek reconsideration of the Court’s ruling that the Distribution Agreement does not cover vehicles manufactured by or on behalf of GMDAT.” After having failed to raise the choice of law before the district court and, in fact, having disavowed any intention to seek reconsideration, Daewoo America cannot now argue that the law used in the interpretation of the contract by the district court was erroneous. See id.
Second, Daewoo America argues that the interpretation of the Distribution Agreement by the district court is not supported by the language of the contract. Daewoo America argues that the district court erroneously concluded that the Distribution Agreement “unambiguously contemplates that [Daewoo America] would distribute only those cars manufactured by [Daewoo Korea] and therefore would not extend to cars manufactured by GMDAT.” Daewoo Motor Am., 315 B.R. at 155. This argument fails.
We agree with the district court that the Distribution Agreement did not grant Daewoo America property rights in vehicles that are neither manufactured nor sold by Daewoo Korea. The “terms of the contract suggest only that [Daewoo America] had the exclusive right to sell or distribute the ‘Products’ of ‘Seller’ (that is, [Daewoo Korea]) and that [Daewoo America] had the exclusive right to distribute Daewoo vehicles (not Suzuki or Chevrolet vehicles) in the United States.” Daewoo Motor Am., 315 B.R. at 155. The rights of Dae-woo America under the Distribution Agreement did not extend to the manufacturing assets of Daewoo Korea transferred by the MTA.
Even under California law, which Daewoo America contends applies, we would affirm the district court. Although, as Daewoo America argues, under California law, whether a “contract is reasonably susceptible to a party’s interpretation can be determined from ... extrinsic evidence,” Cedars-Sinai Med. Ctr. v. Shewry, 137 Cal.App.4th 964, 41 Cal.Rptr.3d 48, 60 (2006), even considering the extrinsic evidence offered by Daewoo America, the Distribution Agreement is not reasonably susceptible to an interpretation that would give Daewoo America any rights in the vehicles manufactured by GMDAT and sold by Chevrolet and Suzuki. The district court correctly concluded that the order of the Korean court approving the Modified Reorganization Plan of Daewoo Korea did not affect any property interest of Daewoo America and did not violate the automatic stay.

B. The District Court Did Not Abuse Its Discretion by Granting Comity to the Order of the Korean Court.

Comity is “the recognition which one nation allows within its territo *1258 ry to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.” Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). To determine whether comity is appropriate, we evaluate three factors: “(1) whether the foreign court was competent and used ‘proceedings consistent with civilized jurisprudence,’ (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just.” Ungaro-Benages, 379 F.3d at 1238. Courts also consider whether “the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments.” Id. In matters concerning bankruptcy “the extension of comity ‘enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.’ ” Int’l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 594 (5th Cir.2003) (quoting Cunará S.S. Co. v. Salen Reefer Seros. AB, 773 F.2d 452, 457-58 (2d Cir.1985)).
Daewoo America argues that the decision of the district court to grant comity to the Korean order is flawed in' four respects. First, Daewoo America argues that it did not have an opportunity to be heard on the claims that are raised in the current litigation and that it was not provided with adequate notice regarding the Modified Reorganization Plan. Second, Daewoo America argues that the application of comity in this case violates the public policy of the United States. Third, Daewoo America argues that the prejudice to its creditors in the United States outweighs any arguments in favor of comity. Fourth, Daewoo America argues that comity should be denied because the Korean court would not grant comity to a decision of the United States. All of these arguments fail.
The district court did not clearly err when it found that Daewoo America had notice of the proceedings in the Korean bankruptcy and an opportunity to participate in those proceedings. The record, which contains multiple notices received by Daewoo America and evidence of the participation of Daewoo America in the bankruptcy process, supports that finding. The argument of Daewoo America that its claims against the defendants were not heard does not refute that Daewoo America had notice of and participated in the Korean bankruptcy proceedings. Moreover, the record supports the conclusion of the district court that the notice received by Daewoo America was adequate. The record evidences that Daewoo America received notice of all the main events of the bankruptcy proceedings, including the final meeting of the creditors on September 30, 2002, to vote on the Modified Reorganization Plan. Daewoo America chose not to attend the meeting, and Daewoo America did not either vote by proxy on or otherwise object to the Modified Reorganization Plan.
Daewoo America has not identified any “public policy notion[ ] of what is decent and just” that is offended by the application of comity to the Korean bankruptcy order. Ungaro-Benages, 379 F.3d at 1238. The district court did not abuse its discretion when it determined that the interests of Korea in regulating business activity on its shores and the interests of the courts in dispersing a debtor’s assets equitably and systematically outweighed the prejudice to Daewoo America, see Int’l Transactions, Ltd., 347 F.3d at 594, and reciprocity is not an absolute precondition *1259 to comity, see Remington Rand Corp.-Del. v. Bus. Sys. Inc., 830 F.2d 1260, 1273 (3d Cir.1987). The argument of Daewoo America also ignores that “the interest of the system as a whole — that of promoting ‘a friendly intercourse between the sover-eignties,’ — also furthers American self-interest, especially where the workings of international trade and commerce are concerned.” In re Maxwell Comm’n Corp., 93 F.3d 1036, 1053 (2d Cir.1996) (internal citation omitted). Under The Treaty of Friendship, Commerce and Navigation Between the United States of America and The Republic of Korea, 8 U.S.T. 2217, in fact, a Korean judgment is elevated to the status of a sister state judgment. See Vagenas v. Continental Gin Co., 988 F.2d 104, 106 (11th Cir.1993). The district court did not abuse its discretion when it granted comity to the order of the Korean court.

C. The District Court Did Not Abuse Its Discretion When It Found That the Claims of Daewoo America Were Intertwined with the Order of the Korean Court.

Daewoo America next argues that the scope of the comity granted to the order of the Korean court should not extend to its claims against the defendants because those claims were not and could not have been raised in the Korean bankruptcy proceeding. Daewoo America argues that because its claims did not exist at the time of the Korean bankruptcy filing, they did not “arise out of the same nucleus of operative fact, [and were not] based upon the same factual predicate, as the Plan Approval Order,” and were not necessarily put at issue by the Korean proceedings. These arguments fail.
The claims of Daewoo America arise out of the same nucleus of operative facts considered by the Korean court. The claims of Daewoo America are based on the Modified Reorganization Plan and MTA, which were approved by the Korean court. The validity of the MTA was necessarily put at issue in the Korean proceedings and necessarily approved by the order of the Korean court. The complaint of Daewoo America regarding the effect of the MTA should have been raised before the Korean court. Daewoo America cannot now collaterally attack that order by bringing claims against the recipients of the property transferred based on the approval by the Korean court.
The collateral nature of the claims of Daewoo Korea is made more apparent by its request for relief. On eleven of fourteen claims, the relief sought is an injunction against the defendants. On another claim, the relief sought is that the “transfer be set aside.” Because granting the relief sought would require the court to set aside the asset transfer to the defendants, which was approved by the Korean court, the complaint is a collateral attack on the order of the Korean court. See Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir.1972) (“Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.”).
The reliance of Daewoo America on In re Piper Aircraft Corp., 244 F.3d 1289 (11th Cir.2001), and La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900 (7th Cir.1990), is misplaced. In In re Piper Aircraft, this Court concluded that the complaint of Kaiser Aerospace and Electronics Corp. against Teledyne Industries, Inc., for breach of contract, breach of fiduciary duty, and constructive trust, was not barred by res judicata because “the facts underpinning the ... action (i.e., Tel-edyne’s alleged breach of [contract] and its fiduciary duties to Kaiser) were not at *1260 issue in the confirmation proceeding.” 244 F.3d at 1297. In contrast, the facts underpinning the complaint of Daewoo America against the defendants were at issue in the Korean proceeding because those facts relate to the approval of the Modified Reorganization Plan and the MTA. The claims of Daewoo America rely entirely on the alleged invalidity of the transactions approved by the Korean court.
Second, La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V. is inapposite. In La Preferida, the Seventh Circuit concluded that the suit of La Preferida against Cer-vecería Modelo for tortious inference with a contract between La Preferida and Corona was not barred by the entry of a consent judgment in the bankruptcy proceedings of Corona. La Preferida, 914 F.2d at 907. The court concluded that the consent judgment was ambiguous and applied the general rule forbidding the application of collateral estoppel to consent judgments. Id. In contrast with La Preferida, the district court did not apply comity to bar the claims of Daewoo America because of a consent judgment. The district court dismissed the claims of Daewoo America because the relief sought by Daewoo America undermined the orders of the Korean court regarding the reorganization of Dae-woo Korea.
This case is more akin to Miller v. Me-inhard-Commercial Corp., in which Miller, a creditor in a bankruptcy proceeding, sued Meinhard-Commercial, another creditor, for fraud nine months after the bankruptcy plan had been confirmed. Miller alleged that he had been fraudulently induced to acquiesce in the bankruptcy plan. 462 F.2d. at 359. The court rejected Miller’s suit as a collateral attack upon the bankruptcy proceedings:
Through his fraud action, Miller is indirectly asserting that the Chapter XI proceeding should never have been approved and that a Chapter X procedure should have been decreed instead. The suit obviously turns upon what could or should have happened in the bankruptcy proceeding. It is specious to argue that Miller’s action in fraud is unrelated or only coincidentally related to the merits of the bankruptcy proceeding.
... The very gist of this suit is the allegation that the arrangement was somehow improper. To sanction it would be in effect to reopen the bankruptcy proceedings and retry the merits in a collateral proceeding.
Id. at 360-61.
The complaint of Daewoo America, likewise, turns on what happened in the Korean bankruptcy proceeding and is inextricably intertwined with the order of the Korean court. In effect, Daewoo America seeks to redistribute the assets that were transferred with the approval of the Korean court. The district court did not abuse its discretion when it dismissed the claims of Daewoo America on the ground of comity.

D. The California Bankruptcy Court Did Not Err When It Dismissed with Prejudice the Claim of Daewoo America for Unjust Enrichment.

The final argument of Daewoo America is that the California bankruptcy court erred when it dismissed the claim of Daewoo America for unjust enrichment without leave to amend. Under California law, a quasi-contract claim for unjust enrichment cannot lie when there is a written contract that covers the same subject matter. Cal. Med. Ass’n v. Aetna U.S. Healthcare, Inc., 94 Cal.App.4th 151, 114 Cal.Rptr.2d 109, 125 (2001). Because all the claims of Daewoo America, including the unjust enrichment claim, rely on the existence of a written contract, amendment *1261 would be futile and the California bankruptcy court did not err when it dismissed the unjust enrichment claim without leave to amend.
IV. CONCLUSION
The dismissal of the complaint of Dae-woo America is
AFFIRMED.