**MOUNT SAGE, LTD., Plaintiff–Counter Defendant–Appellant Cross Appellee,**

v.

**ROLLS–ROYCE COMMERCIAL MARINE INC., Defendant–Counter Claimant–Appellee Cross Appellant,**

M/Y Dolce Vita II, Defendant–Counter Defendant–Appellee.

No. 15–11440
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Jan. 5, 2016.

Scott Andrew Wagner, Andres Benjamin Chiriboga, Michael T. Moore, Clay Michael Naughton, Moore & Company, PA, Coral Gables, FL, for Plaintiff–Appellant–Cross Appellee.

Anthony Cuva, Anthony Joseph Severino, Bajo Cuva Cohen & Turkel, PA, Tampa, FL, for Defendant–Appellee–Cross Appellant.

Before HULL, MARCUS, and DUBINA, Circuit Judges.

PER CURIAM.

Appellant and Cross–Appellee, Mount Sage, Ltd. ("Mount Sage"), filed suit in federal district court asserting various contract claims against Appellee and Cross–Appellant Rolls–Royce Commercial Marine, Inc. ("Rolls–Royce") regarding repairs to a yacht. At the close of Mount Sage's case-in-chief, the district court granted Rolls–Royce's Motion for Judgment as a Matter of Law on one count invoking the Magnuson–Moss Warranty Act. Mount Sage appeals that order. Further, Mount Sage appeals the district court's enforcement of the limitation of liability clause contained in the parties' service contract. Rolls–Royce cross-appeals the district court's damages calculation. After reviewing the record and reading the parties' briefs, we affirm in part and reverse and remand in part.

## I. BACKGROUND

Robert Mintz is the owner of Mount Sage and the DOLCE VITA II, a yacht equipped with two MTU-brand 12V200 engines and a water jet propulsion system. In February 2011, Mount Sage purchased guide vanes from Rolls–Royce for the vessel's water jets. The parts were warranted and included terms (the "Parts Terms")

disclaiming Rolls–Royce's liability in the event "the Part has been installed repaired or altered other than by [Rolls–Royce] in any way that—in [Rolls Royce's] judgment—would affect the performance or reliability of the Part."

In June 2011, Mount Sage hired Rolls Royce to perform an overhaul of the water jets and replace the yacht's existing guide vanes with those purchased in February 2011. Rolls–Royce provided a copy of its service terms (the "Service Terms") with its quote for the overhaul, which the parties stipulated at trial constituted the parties' contract for the overhaul and installation. The service contract contained the following limitation of liability clause:

IN NO EVENT, WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE WILL SELLER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES OF ANY KIND....
THE TOTAL LIABILITY OF SELLER, WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, OR RESULTING FROM THE PERFORMANCE NONPERFORMANCE OF ANY PURCHASE ORDER, OR FROM THE MANUFACTURE, SALE, DELIVERY, RESALE, REPAIR, REPLACEMENT OR USE OF ANY PART OR THE FURNISHING OF ANY SERVICE RELATED THERETO, WILL IN NO EVENT EXCEED TWENTY PERCENT (20%) OF THAT TOTAL PRICE OF THE PURCHASE ORDER THAT GIVES RISE TO THE CLAIM.

During the overhaul, Rolls–Royce observed cracks in the yacht's impellers. Rolls–Royce notified Mintz that the impellers needed to be reconditioned, but Mintz requested that Rolls–Royce perform temporary repairs. These repairs were performed under a separate work order totaling $8,960.55. Following the overhaul and repairs, Mintz noticed that the DOLCE VITA II experienced vibrations. Rolls–Royce investigated the vibrations and paid a third party to balance the impellers. Rolls–Royce's vibration analysis registered no vibrations after the balancing.

Despite this, Mintz continued to notice vibrations and observed deterioration in the guide vanes. In September 2012, Mount Sage again purchased new impellers and guide vanes from Rolls–Royce, which were installed by another marine repair facility, Advantage Marine Services. Even after the installations of the new parts, Mintz continued to notice vibrations in the vessel. Mintz ultimately discovered the cause—the engines were not properly aligned with the water jets.

Mount Sage brought suit against Rolls–Royce alleging breach of express and implied warranties for the sale of its parts and work conducting the overhaul. Mount Sage also alleged a violation of the Magnuson–Moss Warranty Act ("MMWA"). During the jury trial, Rolls–Royce moved for judgment as a matter of law on all counts at the close of Mount Sage's case-in-chief. Specifically, Rolls–Royce argued that Mount Sage failed to present any evidence the parts supplied by Rolls–Royce were defective or prove the existence of a contract. Mount Sage voluntarily dismissed Counts I, II, and VI relating to the sale of the parts. The district court denied Rolls–Royce's motion as to Counts III and IV—Breach of Express Warranty for Labor/Services and Breach of Implied Warranty for Workmanlike Performance—noting that the Service Terms were the stipulated service contract between the parties. The court granted

Rolls–Royce's motion to dismiss Count V under the MMWA because it determined that the Service Terms for the overhaul did not constitute a "service contract" as defined in the MMWA.

The jury found that Rolls–Royce breached the implied warranty for workmanlike performance and Mount Sage breached the service contract by failing to pay Rolls–Royce. The jury awarded Mount Sage $103,038.26 in direct damages consisting of a $29,707.30 invoice from Rolls–Royce; "Various Invoices" totaling $43,000; $1,523.40 invoice from Lauderdale Marine Center, LLC; $24,487.70 invoice from Advantage Marine Services; and a $4,319.86 invoice from Lauderdale Marine Center, LLC. The jury awarded Rolls–Royce $10,000.

Mount Sage filed a post-verdict motion for reconsideration of damages, arguing that the limitation of liability clause contained in the service terms was unenforceable. The district court denied the motion, concluding that the clause was enforceable under admiralty law. The court's Order of Final Judgment reduced the jury award to 20% of its total, "pursuant to the Services Terms."

## II. ISSUES

1) Whether the district court erred in determining that the limitation of liability clause contained in the Service Terms was enforceable under admiralty law.

2) Whether the district court erred in dismissing Mount Sage's Magnuson–Moss Warranty Act claim because it determined that the parties' service contract was not covered under the Act.

3) Whether the district court erred in calculating Mount Sage's damages pursuant to the limitation of liability provision.

## III. STANDARDS OF REVIEW

We review de novo the district court's order granting a motion for judgment as a matter of law. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir.2004). "A judgment as a matter of law is warranted only '[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *U.S.S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir.2004) (quoting Fed.R.Civ.P. 50(a)(1)). Contract interpretation is a question of law reviewed de novo. *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir.2006). "[R]eviewing damage awards, this court should reverse only if it finds the award to be clearly erroneous." *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923 (11th Cir.2001).

## IV. DISCUSSION

### A. Limitation of Liability Clause

The Eleventh Circuit applies the three-part test to determine whether a limitation of liability clause is enforceable in a maritime contract.[1] *Diesel "Repower", Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1324 (11th Cir.2001). The clause must (1) clearly and unequivocally indicate the parties' intentions; (2) not absolve the repairer of all liability and still provide a deterrent to negligence; and (3) the "businessmen" must have equal bargaining power so there

---

1. A contract to repair a vessel, at issue in the instant case, invokes admiralty jurisdiction. *See Diesel*, 271 F.3d at 1322–23. The federal interest in uniform application of admiralty law is great. *Id.* at 1324. Therefore, the interpretation of a limitation of liability clause in a vessel repair contract is governed by substantive admiralty law. *See id.*

is not overreaching. *Id.* In *Diesel*, Islander Investments hired Diesel "Repower" to repower Islander's vessel. *Id.* at 1319–20. The parties' contract contained a limitation of liability clause limiting Diesel's liability to the purchase order price. *Id.* at 1324–25. The Eleventh Circuit concluded that the clause was enforceable where the parties' intent was clear; the director of Islander was a sophisticated businessman familiar with the marine industry; and the exposure of the purchase order price, uncompensated labor, and replacement parts provided a sufficient deterrent to negligence. *Id.* at 1325.

Mount Sage attacks the validity of the limitation of liability clause in this case on the same grounds presented to the district court—that the clause was not a sufficient deterrent to negligence and the parties did not have equal bargaining power.[2] The district court properly dismissed these arguments in its well-reasoned order on Mount Sage's post-trial motion for reconsideration.

First, to find a limitation of liability clause unenforceable for unequal bargaining power "[t]here must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause." *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 720 (8th Cir.2003) (applying admiralty law). As in *Diesel*, the

record clearly supports that Mintz is a sophisticated businessman familiar with the maritime industry and with equal bargaining power as Rolls–Royce. Further, Mount Sage's misreading of the Parts Terms to impute in the Service Terms a mandate to use Rolls–Royce to install parts does not establish the overreaching discussed in *Diesel* and *Sander*.

Mount Sage next argues that the dollar value Rolls–Royce was obligated to pay under the limitation of liability clause was insufficient in light of Mount Sage's damages. Our precedent does not set a fixed dollar amount or percentage obligation in a limitation of liability clause to be a sufficient deterrent. Instead, whether the terms of a limitation of liability clause are a sufficient deterrent to negligence is a "fact-specific inquiry ... [considering the] liability risks compared to the overall obligations under the contract." *Diesel*, 271 F.3d at 1325. In the instant case, Rolls–Royce was required to pay 20% of the purchase order price and, similar to *Diesel*, provide uncompensated labor and replacement parts to conduct repairs under warranty. Considering Rolls–Royce's overall obligations under the service contract, we agree with the district court's finding that these potential liabilities were a sufficient deterrent to negligence. Therefore, we affirm the district court's determination that the limitation of liability clause was enforceable under admiralty law.

---

2. Mount Sage advances additional arguments in its brief that the limitation of liability clause is invalid. First, Mount Sage incorrectly argues that the limitation of liability clause is also an unenforceable liquidated damages clause. The district court correctly dismissed this argument. Next, Mount Sage argues that the contractual remedies fail their essential purpose under New York warranty law and the UCC. As Rolls–Royce correctly points out, this argument is unavailing—the only contract at issue on appeal is for services, and New York's application of the UCC does not apply to services. *Directory Publishers Inc. v. Lake Country Hearth & Leisure*, 193 Misc.2d 799, 753 N.Y.S.2d 660, 662 (N.Y. 2002) (citations omitted) ("New York Courts have consistently held that the UCC does not apply contracts which are predominately for the rendition of work, labor and services rather that for the sale of goods.")

### B. MMWA

The Magnuson–Moss Act[3] ("MMWA") is designed to protected consumers from deceptive warranty practices in the sale of "consumer products" or "service contracts." The term service contract is defined in the MMWA as "a contract in writing to perform, over a fixed period of time or for the specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8). Services related to separate repairs or installations are not covered. *See generally Robin Towing Corp. v. Honeywell, Inc.,* 859 F.2d 1218, 1223 (5th Cir.1988) (where repairs to the consumer's fire alarm were obtained by separate oral requests and none of the consumer's contracts with the supplier contemplated future maintenance services, the supplier extended no service contract as defined in the MMWA); 16 C.F.R. § 700.1(h) (2015) ("[W]arranties which apply solely to a repairer's workmanship in performing repairs are not subject to the Act.")

Mount Sage voluntarily dismissed all counts related to warranties on the parts sold by Rolls–Royce. Therefore, its remaining claims concerned the warranties associated with the separate Service Terms for the overhaul of the water jets. This separate contract did not contemplate maintenance or repair of the parts sold "over a fixed period of time." Accordingly, the MMWA does not apply to Mount Sage's remaining claims and the district court correctly dismissed Count V.

### C. Damages Calculation

In its Order of Final Judgment, the district court reduced the total damages awarded by the jury to 20%, "pursuant to the Services Terms." We conclude this calculation constitutes clear error. As dis-

cussed above, the district court found as a matter of law that the limitation of liability clause in the Service Terms was enforceable. The Service Terms expressly state that Rolls–Royce's liability could not "exceed twenty percent (20%) of that total price of the purchase order that gives rise to the claim." As Rolls–Royce points out, the jury verdict awarded damages from repair work conducted by third parties, outside the scope and price of Rolls–Royce's overhaul purchase order. Accordingly, the district court's reduction of the total jury award to 20% incorrectly included those third party invoices. Therefore, we reverse the district court's Order of Final Judgment and remand with instructions that damages be recalculated to conform to the contract's limitation of liability.

### V. CONCLUSION

For the foregoing reasons, we affirm the district court orders dismissing Count V under the MMWA and enforcing the limitation of liability clause in the Service Terms. We reverse the Order of Final Judgment, and remand this case with the instruction to recalculate the damages in accordance with the Service Terms.

AFFIRMED in part, REVERSED and REMANDED in part.

---

3. 15 U.S.C. §§ 2301–2312 (2012).